## WATSON *against* OSBORNE :

### IN ERROR.

WHERE a witness introduced by the plaintiff, in an action on the case for fraudulently putting off the bills of a broken bank, having testified, that the defendant, on the forenoon of the day mentioned in the declaration, called at the office of the witness, and offered to pass to him certain bills of such bank, when the witness informed the defendant, that such bank had failed, and that in the afternoon of the same day, the plaintiff called at the office of the witness, and shewed him certain bills of such bank, and told him, that he (the plaintiff) had, that day, received them from the defendant, such witness was cross-examined as to his recollection of the identity of the bills, and on such cross-examination, expressed some hesitation from his own recollection of

*Hartford,*
*June, 1831.*

Watson
*v.*
Osborne.

the identity of the bills; after which the plaintiff requested the witness to state the particulars of the conversation between them, not to shew that the facts stated in such conversation were true, but merely to shew that the witness recollected what he had testified, and the reason why he recollected it; it was held, that the last mentioned evidence was inadmissible for the purpose for which it was offered, and was not proper to go to the jury under the direction of the court restricting it to that purpose alone.

Where the declaration, in such action, described the bills put off as "one ten dollar bank bill and ten five dollar bank bills, all of the *Farmer's Bank* in *Belchertown;*" it was held, that the plaintiff could not recover, without proving, that the bills put off were of the particular denominations specified.

And in such case, it makes no difference, if the specification of the bills be laid under a *videlicet.*

THIS was an action on the case, brought by *Osborne* against *Watson*, for fraud in passing to the plaintiff certain bank bills, as the bills of a solvent bank, knowing such bank to be insolvent.

The declaration contained two counts. The first count stated, That the defendant, at *Hartford*, on the 11th of *August* 1829, was possessed of one ten dollar bank bill and ten five dollar bank bills, all of the *Farmers Bank* in *Belchertown* (*Massachusetts*), which were of no value, said bank having previously stopped payment, and become insolvent; and that afterwards, on the same day, the defendant, having himself full knowledge of this fact, but before it was generally known in *Hartford*, intending to deceive and defraud the plaintiff, who was ignorant of the failure of said bank, passed off and paid over to the plaintiff said bank bills above described, as and for good bills of a solvent bank, for a valuable consideration then and there paid to him by the plaintiff. The second count stated, That the defendant, at *Hartford*, on the 11th of *August* 1829, was possessed of certain other bank bills, to wit, one ten dollar bank bill and ten five dollar bank bills, all of the *Farmers Bank* in *Belchertown, Massachusetts,* which said described bank bills were then of little or no value; said bank having previously stopped payment, failed and become insolvent; that the failure of said bank was not, at that time, generally known in *Hartford*, but was then well known to the defendant; that the defendant, having such knowledge, with intent to deceive and defraud the plaintiff, at that time a licensed vendor of lottery tickets in *Hartford*, did then and there, by fraudulently and deceitfully suppressing his knowledge from the plaintiff, who was ignorant of said failure, and by thus

fraudulently and deceitfully representing said bills to the plain- *Hartford,* tiff as of a good and solvent bank, pay over to the plaintiff June, 1831. said bills, and induce the plaintiff to receive said bills of him the defendant, as and for good money or bills of a solvent bank, in payment for thirty dollars worth of lottery tickets and thirty dollars in current bank bills, by the defendant then and there purchased and received of the plaintiff.

*Watson v. Osborne.*

On the trial, on the general issue, before the county court of *Hartford* county, the plaintiff introduced *Daniel Burgess,* as a witness, who testified, that in the forenoon of the 11th of *August* 1829, the defendant called at the office of the witness, and offered to pass to him certain bills of the *Farmers Bank* in *Belchertown,* when the witness informed the defendant, that this bank had failed. The witness further testified, that in the afternoon of the same day, the plaintiff called at the office of the witness, and shewed him certain bills of the *Belchertown Bank,* and told him, (the witness) that he (the plaintiff) had, that day, received them from the defendant; the plaintiff claiming, that these were the bills mentioned in the declaration and were received as therein stated. The witness was then cross-examined, as to his recollection of the identity of the bills shewn to him, by the defendant in the forenoon, and by the plaintiff in the afternoon; and on such cross-examination, the witness, after restating his testimony, expressed some hesitation from his own recollection as to the identity of the bills. The plaintiff's counsel then requested the witness to state the particulars of the conversation between him and the plaintiff, not to shew, that the facts stated in such conversation were true, but merely to shew, that the witness recollected what he had testified, and the reason why he recollected it. This testimony was objected to, by the defendant's counsel; but the court admitted it, for the purpose for which it was offered, stating, in the hearing of the jury, that it was to be received for that purpose only.

In the course of the trial, the defendant's counsel claimed, that the plaintiff was bound to prove to the jury, that he had received from the defendant bills of said bank of the particular denominations stated in the declaration; and that he could not prove the fraud complained of, unless *such* bills were put off to him. The defendant claimed, that the plaintiff had not offered any evidence tending to prove that bills of the de- nominations stated were passed to him, and therefore pray-

ed the court to instruct the jury, that the defendant was entitled to their verdict. The court charged the jury, that to sustain the plaintiff's declaration, it was incumbent on him to prove, that the defendant passed to the plaintiff bills of the bank mentioned in the declaration; but that the denomination of the bills was not material; and the amount was material only so far as it might affect the damages.

The jury returned a verdict for the plaintiff; and the defendant, having filed a bill of exceptions, brought a writ of error in the superior court, assigning for causes of error, the decisions of the court in the admission of testimony and in their charge to the jury. The questions arising on such writ of error, were reserved for the opinion of this Court.

*Toucey*, for the plaintiff in error, contended, 1. That the general rule of law excluding the declarations of a party in his own favour, not made in the presence of the adverse party, was applicable to the testimony offered by the plaintiff. The *purpose* for which the testimony was admitted, was a mere evasion of this rule. It could have no such effect as the plaintiff's counsel pretended. It did not tend to shew the distinctness of the witness's recollection, nor the reason why he recollected. But it would have an influence which it ought not have; and if this course is sanctioned, a party may make evidence for himself *ad libitum;* for a similar pretence can never be wanting.

2. That the charge was incorrect.

In the first place, the bills are an essential part of the plaintiff's ground of action. The description " one ten dollar bill and ten five dollar bills of the *Farmers Bank* in *Belchertown*," excludes all others.

Secondly, an allegation descriptive of that which is essential to the claim or charge, must be proved. 3 *Stark. Ev.* 1530. No averment of any matter essential to the claim or charge, can ever be rejected. And this position extends to all allegations, which operate by way of description or limitation of that which is material. 3 *Stark. Ev.* 1542. & seq. Here, the action was brought for the fraudulent sale of eleven written instruments, described by the name of the maker, and by the sums payable by them respectively. Now, the maker and the sum payable are of the essence of the instrument, and essen-

tial to its identity. 3 *Stark. Ev.* 1598. *Bissell* v. *Drake*, 19 *Johns. Rep.* 66. *Weal* v. *King* & al. 12 *East* 452.

Thirdly, the action being for a tort founded on a contract of sale, the fraud could not exist without the contract ; which is, therefore, essential, and must be proved as alleged ; because one contract is not another ; and without identity, there is no proof of that which is essential to the claim or charge. 3 *Stark. Ev.* 1548. 1542. & seq. 1 *Chitt. Plead.* 304. & seq. *Bristow* v. *Wright* & al. *Doug.* 665. *The United States* v. *Porter*, 3 *Day* 283.

*C. Shepard* and *Chapman*, contra, insisted, 1. That the testimony of *Burgess* was properly admitted, for the purpose for which it was offered. This was not to prove the *truth of any assertion*, made either by the witness or the party, in the conversation referred to ; but simply to shew, after the recollection of the witness had been questioned, on cross-examination, that he *did* recollect what he had previously testified, and the *reason* why he recollected it. The court admitted the evidence for this purpose only, and cautioned the jury against applying it to any other purpose. That a witness's means of knowledge and aids of recollection may, generally, on cross-examination, and re-examination, be fully investigated, is unquestionable. The only debateable enquiry, on this part of the case, is, whether the means and aids here resorted to, were lawful. If the witness had held a conversation with *any* person, about the transaction, a few hours after it took place, it will not be denied, that this would tend to fix his attention upon it, and strengthen his recollection. Why may not the witness state this, when the distinctness of his recollection is called in question ?

It is said, that if the conversation was with the *party*, and what *he* said may be proved, he would be allowed to make evidence for himself. But this is not so. The conversation is not offered or received in support of any fact asserted therein. If it awakened the attention of the witness to the matters in controversy, and impressed them on his memory, this ought to be made known ; but the conversation, of itself, does not go to prove or disprove any facts. Suppose the plaintiff, an hour after the transaction, had requested the witness to make a written memorandum of it, and he had done so ; might he not mention this, after a cross-examination, to shew, that his recol-

*Hartford,*
June, 1831.

Watson,
*v.*
Osborne.

lection was clear, and why it was so? When a witness's recollection is assailed, may not any event in nature, come from what quarter it will, which *in fact* tended to aid his recollection, be shewn, to vindicate him from the imputation of want of recollection?

2. That the charge of the court was correct. Falsehood and deceit, in putting off the bills of a broken bank, are the gist of the action, which, coupled with damage, is all that is necessary to be alleged or proved. These are the substantial matters in issue. If these are proved, though other matters incidental to them, alleged in the declaration, are not proved, the plaintiff is entitled to recover. The particular denominations of the bills are, in this case, immaterial; especially, as the allegation respecting them, is laid under a *videlicet.* It may be wholly rejected, without prejudice to the plaintiff's charge or claim; and therefore, it need not be proved. In such an action as this, a detailed statement of the manner in which, and of the means by which, the fraud was effected, is unnecessary. The plaintiff has not declared on a contract; he complains not of the breach of any contract; and the undisputed rule requiring strict proof of contracts as set forth in the declaration, is inapplicable here. If the declaration speaks of a contract, it is of a contract *executed ;* and it is stated merely as a part of the means of effecting the fraud. *Barney* v. *Dewey*, 13 *Johns. Rep.* 224. *Corning* v. *Davison, Cowen* 22. *Cunningham* v. *Kimball,* 7 *Mass. Rep.* 65. *Wilson* v. *Codman's* exr. 3 *Cranch* 193. 1 *Stark. Ev.* 386.

PETERS, J. The causes of error assigned by the plaintiff in error, may be resolved into two. 1. Was the testimony of *Daniel Burgess* admissible? 2. Was the charge of the court correct?

No rule is better settled than this, that a party cannot make evidence for himself, unless it be this, that the confession of a party, or what is said in the presence of a party and not contradicted, is evidence against him. In the case before us, the plaintiff below, in the absence of the defendant below, shewed the witness certain bills, and said, that he had just received them of the defendant. A party could never want testimony, if he could *make it so easily.*

2. The action is brought for a fraud in passing bank bills, specifically described in the declaration: and the court permitted the plaintiff to give in evidence other bills, not

specifically described. As well might a man bring trover for *Hartford,* a horse, and prove that he had lost an ox ! If the declaration *June, 1831.* had been general,—that is, had alleged a certain *amount* in bills, perhaps the plaintiff might have given in evidence any bills of the same bank. But as the declaration specifies the bills, the plaintiff must prove them specifically.

*Watson*
*v.*
*Osborne.*

But the defendant in error contends, that this specification in the second count is immaterial, and laid under a *videlicet ;* and that it may, therefore, be stricken out. Still it is not stricken out ; and if it were, the declaration would be of and concerning certain other bank bills or notes, all of the *Farmers Bank,* without any description of their amount or denomination.

I therefore advise, that the judgment of the county court be reversed.

The other Judges concurred.

Judgment to be reversed.