## State of Connecticut *v.* Gregory Erhardt
### (6524)

Dupont, C. J., Spallone and Foti, Js.·

Argued October 5, 1988—decision released January 24, 1989

*Carl D. Eisenman,* public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, was *Dennis A. Santore,* state's attorney, for the appellee (state).

Spallone, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of robbery in the first degree, General Statutes § 53a-134 (a) (3), and attempt to commit larceny

in the first degree by extortion, General Statutes §§ 53a-122 (a) (1) and 53a-49. The defendant claims that the trial court erred (1) in denying his request to compel a codefendant to answer "non-self-incriminating" questions, in violation of his right under the Connecticut constitution and General Statutes § 54-153 to compulsory process, and (2) in excluding as hearsay the testimony of a witness concerning what was told to her by an unavailable defense witness. We find no error.

The jury could reasonably have found the following facts. On February 3, 1987, the victim went to the premises at 42 Taylor Terrace in New Milford, a house he owned that was being rented by his daughter and her husband. Lisa Percoco, the defendant's girlfriend, who was a friend of the victim's daughter, was at the residence. The victim and Percoco were in a bedroom, partially dressed, engaging in sexual activity when the defendant entered the room and represented by his actions that he was photographing them. While the victim was attempting to dress, he was attacked by the defendant, who struck him, threw him down the stairs, put a knife to his throat, and took his wallet, which contained approximately $120. The defendant then informed the victim that, unless the victim procured $5000 and placed it in a mailbox at a designated address by 8 p.m. that night, the defendant would show the purported photographs to the victim's wife. The victim proceeded to make telephone arrangements for the procurement and placement of the money according to the defendant's instructions. The defendant and Percoco left the premises together.

Thereafter, the victim reported the incident to the police, who subsequently arrested the defendant and Percoco. Percoco was charged with attempt to commit larceny in the first degree by extortion. The defendant and Percoco were originally scheduled to be tried

in the same proceeding, but the court granted Percoco's motion to sever. Her trial was scheduled to follow the defendant's.

During the course of his trial, the defendant called Percoco as a witness. Percoco was questioned in an offer of proof outside the presence of the jury. Initially, in response to defense counsel's questions, she gave her name and testified that she knew the defendant. She refused to say how long she had known the defendant, asserting her rights under the fifth and fourteenth amendments. She went on to answer questions as to her age and birthdate. She refused to answer a question inquiring where she had been living on February 3, 1987, the date of the incident in question, again citing her fifth amendment privilege. She answered in the affirmative a question about whether she had been receiving public assistance during February, 1987. Thereafter, in obedience to the court's order directing her to answer yes or no, Percoco affirmed that she had prepared a letter or written statement addressed to the defendant sometime after February 3, 1987. Relying on the fifth amendment privilege, she refused to answer all other questions.[1]

---

[1] Percoco claimed the privilege with respect to the following questions:

(1) "Do you know [the victim]?"

(2) "During January and the very early part of—first few days of February, 1987, did you have a roommate, [was your roommate the victim's daughter]?"

(3) "During January and the early part of February, 1987, were you living in a premises which was owned by someone else?"

(4) "During January and February, 1987, were you afraid of one of the joint owners of the premises?"

(5) "Did one of your landlords during January, 1987, make suggestions to you of a sexual nature?"

(6) "Did you sometime after February 3, 1987, write a single page note or letter to the defendant consisting of six paragraphs?"

(7) "Is that a copy of the note you wrote to the defendant?"

(8) "Did you give to the New Milford police department or officers of the New Milford police department one or more statements in writing in

Upon completing his unsuccessful line of questioning, defense counsel requested the court's permission to call Percoco to the stand in front of the jury to ask her those questions that she had willingly answered without asserting a fifth amendment privilege. The state's attorney objected. After a discussion between counsel and the court regarding the relevance of the testimony Percoco would willingly offer (i.e., her name, age, the fact that she knew the defendant, the fact that she was receiving public assistance, and the fact that she had sent a written document to the defendant), the state moved that the court not permit Percoco to take the stand as a witness before the jury. Percoco's counsel argued that Percoco had an "absolute right not to testify to anything incriminating" and that she had indi-

connection [with] any event which took place in New Milford on or about February 3, 1987?"

(9) "If any such statements were prepared for you by the New Milford police department in connection with an event which took place on or about February 3, 1987, did you at a subsequent time, that is at a later time, state that those statements were incorrect?"

(10) "Did you sometime after February 3, 1987, in connection with an event that happened on or about February 3, 1987, write to the defendant and tell him that the police would not let you handwrite your own statements?"

(11) "Did you, in a written communication to the defendant sometime after February 3, 1987, tell him that the police told you if you just signed the statement you would be permitted to leave?"

(12) "Were you sick at the time you gave statements to the New Milford police department, if in fact you gave any statements to the New Milford police department?"

(13) "Prior to February 3, 1987, did the owner of the house in which you were living make suggestions to you to engage in sex acts?"

(14) "Did you on February 3, 1987, on or about February 3, 1987, in the town of New Milford, in your residential premises, did you have occasion to witness an altercation between the defendant and someone else?"

(15) "Sometime after February 3, 1987, anytime between February 3, 1987, and this date, did you have occasion to talk to officers of the New Milford police department on any subject whatsoever?"

(16) "Did you attempt to, after February 3, 1987, recant or retract or withdraw statements previously made to officers of the New Milford police department?"

cated to him that she was "not willing to answer any questions at all." The court then questioned Percoco, who reiterated her decision not to answer certain questions.[2] Thereafter, the court ruled that questioning of Percoco in the presence of the jury would not be permitted.

The question in this appeal is whether the court erred in permitting Percoco to exercise a "blanket privilege" by refusing to answer any and all questions in front of the jury. The defendant argues that the court's decision in this regard resulted in the denial of his right to compulsory process under article first, § 8, of the Connecticut constitution and his statutory right under General Statutes § 54-153 to have witnesses summoned on his behalf. These claims are without merit.

Under the circumstances of this case, the trial court did not err in refusing to compel the witness to testify before the jury. At the time she was called to testify at the defendant's trial, Percoco was awaiting trial on charges based on the same alleged facts and circumstances that gave rise to the charges brought against the defendant. Consequently, while being questioned by defendant's counsel outside the jury's presence, she repeatedly asserted her fifth amendment right not to incriminate herself and declined to answer all material questions. The trial court correctly sustained her claim of privilege. In order for the trial court properly to refuse to recognize the privilege when a witness invokes

---

[2] The following colloquy took place:

"The Court: Would you be willing to be sworn in as a witness?

"Mrs. Percoco: Yes.

"The Court: And let us assume that the court should direct you to answer certain questions, what would be your position?

"Mrs. Percoco: I would still refer to my fifth amendment right.

"The Court: Based on your attorney's advice?

"Mrs. Percoco: Yes.

"The Court: Is that your position?

"Mrs. Percoco: Yes."

it, it must be *"perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken and that the answer[s] *cannot possibly have . . .* a tendency to incriminate." (Emphasis in original.) *Hoffman* v. *United States,* 341 U.S. 479, 488, 71 S. Ct. 814, 95 L. Ed. 1118 (1951); see also *State* v. *Williams,* 200 Conn. 310, 319, 511 A.2d 1000 (1986); *State* v. *Simms,* 170 Conn. 206, 209, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976). To sustain the privilege against self-incrimination, it need only be evident from the implications of the question, in the context in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *State* v. *Simms,* supra, citing *Hoffman* v. *United States,* supra, 486–87. In view of the fact that Percoco was awaiting trial on a criminal charge arising out of the same factual circumstances as the charges against the defendant, it is clear that any testimony she might give could compromise her ability to defend herself against that pending charge. See *State* v. *Williams,* supra, 319–20 (codefendant whose trial had been severed from that of the defendant and who had pleaded guilty, but was awaiting sentencing, was properly permitted by the court to invoke the fifth amendment privilege and refuse to testify at the defendant's trial); *United States* v. *Thornton,* 733 F.2d 121, 125–26 (D.C. Cir. 1984) (trial court properly concluded that *any* testimony by the codefendant could tend to incriminate him). The trial court therefore acted properly in sustaining Percoco's claimed fifth amendment privilege not to testify.

The defendant contends, however, that the court at least should have required Percoco to take the witness stand in front of the jury and answer those questions she had willingly answered outside the jury's presence. The defendant says this would have assisted the jury

in evaluating the credibility of the victim's testimony. The defendant essentially argues that in this way the court could have accommodated his state constitutional right to compulsory process to obtain witnesses in his behalf. He refers to the decision in *State* v. *Bryant,* 202 Conn. 676, 523 A.2d 451 (1987), in support of these claims.

It is true that the defendant has a right under article first, § 8, of the state constitution to have compulsory process to produce witnesses in his behalf. Percoco, however, had a fifth amendment privilege against self-incrimination. In a conflict between the rights of the accused and the privilege of a witness, "the accused's right to compel testimony must give way to the witness' privilege against self-incrimination, just as the power of the state to compel testimony must give way to the privilege." *State* v. *Simms,* supra. The decision in *State* v. *Bryant,* supra, does not alter that conclusion. In *Bryant,* the Supreme Court held that the trial court had erred in refusing to compel a witness to answer before the jury only those questions he had willingly answered on the voir dire. The trial court had refused to compel the witness to testify on the basis that the testimony the witness had willingly given was irrelevant. The Supreme Court held that the testimony was clearly relevant because the identity of the culprit was in issue and the witness had willingly testified, without asserting his fifth amendment privilege, to his age, height, weight, familial relationship to the defendant, and other discrete facts which would have been useful to the jury in evaluating whether the defendant was guilty of the crimes charged. In *Bryant,* therefore, the trial court's refusal to compel the witness to testify was erroneous only because the witness had been willing to offer clearly relevant, and potentially exculpatory, testimony.

In this case, however, the trial court reasonably concluded that the few statements Percoco was willing to make would be irrelevant. The trial court is vested with broad discretion in ruling on questions of relevancy. *State* v. *Runkles,* 174 Conn. 405, 413, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978). The trial court did not abuse its discretion in concluding that testimony by Percoco regarding her name, age, acquaintance with the defendant, and receipt of public assistance would be unlikely to have any tendency to establish a fact or facts in issue. The trial court did not err in refusing to compel Percoco to answer before the jury those questions she had previously answered willingly, without invoking the privilege.

The defendant's final claim of error is that the trial court erred in excluding the testimony of Karen Hine, a witness called by the defendant. In an offer of proof, Hine, welfare director for the town of New Milford, testified that Percoco had told her in a conversation in her office on the date of the events in question that she was frightened because the victim had made sexual threats on the telephone and had told her he was going to come to the house that night. Hine testified that Percoco had asked what she should do.[3] The court sustained the state's objection that the testimony was hearsay and irrelevant and ruled that Hine would not be permitted to testify. The defendant argues that since Percoco herself was "unavailable" by virtue of her exercise of her fifth amendment privilege, the court should have permitted Hine to testify about what Percoco had said. The defendant asserts that in this case the out-

---

[3] Hine testified as follows:

"She told me that she was very frightened that day, and [the victim] had made sexual threats on the telephone, and he called her and told her he was coming up to the house that night, and she asked me what she should do. I advised her not to let him into the house and to lock the door."

of-court declarations of the unavailable witness should have been admitted because they were relevant and reliable.

Hearsay statements which are not admissible under any of the recognized exceptions to the hearsay rule may nevertheless be admissible if "(1) . . . there was a reasonable necessity for the admission of the statement[s], and (2) . . . the statement[s] [were] supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." *State* v. *Sharpe,* 195 Conn. 651, 664, 491 A.2d 345 (1985); see also *State* v. *Stepney,* 191 Conn. 233, 249, 464 A.2d 758, cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1983); *State* v. *Summerville,* 13 Conn. App. 175, 180, 535 A.2d 818 (1988).

The defendant has failed to establish that the hearsay statements were admissible under this test and that the trial court abused its discretion in ruling that they were inadmissible. On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference. *Ellice* v. *INA Life Ins. Co. of New York,* 208 Conn. 218, 222, 544 A.2d 623 (1988); *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986). Rulings on evidentiary matters will be disturbed only upon a showing of clear abuse of discretion. *Ellice* v. *INA Life Ins. Co. of New York,* supra; *State* v. *Acquin,* 187 Conn. 647, 680, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 411 (1983).

The defendant argues that the trial court should have permitted Hine to testify about Percoco's statements because Percoco herself had been rendered unavailable to testify about them. The unavailability of the declarant can be a factor creating a "reasonable necessity" for the admission of a hearsay statement; *State* v. *Sharpe,* supra, 665; *In re Jason S.,* 9 Conn. App. 98,

106, 516 A.2d 1352 (1986); and the declarant is considered "unavailable" when he or she has exercised a valid testimonial privilege. *Reilly* v. *DiBianco,* 6 Conn. App. 556, 563, 507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d 192 (1986). The fact that the declarant is unavailable to testify about her own statements, however, does not automatically mean that there is a "reasonable necessity" for the admission of hearsay offered by another witness. The hearsay statement must, in any event, contain information necessary to the resolution of the case. *State* v. *Sharpe,* supra, 664–65. The trial court in this case could reasonably have concluded that Hine's testimony about Percoco's statements was not necessary to the determination of whether the defendant committed the crimes with which he was charged. The information contained in the hearsay statement was not so clearly relevant and necessary to the resolution of the issues that the trial court's refusal to permit the testimony amounted to an abuse of discretion.

The defendant also has failed to demonstrate that the hearsay statements were supported by "the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." *State* v. *Sharpe,* supra, 664. The types of statements which fall within recognized exceptions to the hearsay rule are admissible because they were made under circumstances tending to assure that the statements are reliable. For instance, a dying declaration is admissible if the declarant was conscious of his impending death; *State* v. *Onofrio,* 179 Conn. 23, 43, 425 A.2d 560 (1979); because the circumstances in which the statement is made indicate a strong likelihood that the statement is truthful. See *United States* v. *Bailey,* 581 F.2d 341, 348 (3rd Cir. 1978). Similarly, statements of the declarant made at a prior proceeding are admissible in a pending proceeding, *In re Durant,*

80 Conn. 140, 151–52, 67 A. 497 (1907), because statements made while the declarant was under oath and subject to cross-examination carry strong indicia of reliability. See *United States* v. *Bailey,* supra. The defendant in this case has presented no argument that the statements of the declarant, Percoco, were made in circumstances according them guarantees of reliability and trustworthiness equivalent to those justifying the admission of hearsay statements under the traditional exceptions to the hearsay rule. Rather, he argues that Hine was a credibile witness because she was disinterested and therefore the court should have permitted her testimony. Clearly, this argument is without merit. The testimony of a credible witness who faithfully reports the statement of another is no less suspect than any other hearsay evidence in the absence of a showing that the declarant's statement was made under circumstances justifying a conclusion that the statement is reliable.

The trial court did not abuse its discretion in ruling on the admissibility of the testimony.

There is no error.

In this opinion the other judges concurred.