## STATE OF CONNECTICUT *v.* ANTHONY HAWKINS
### (7207)

BORDEN, DALY and NORCOTT, Js.

Argued June 15—decision released September 5, 1989

*Christopher M. Cosgrove,* assistant public defender, for the appellant (defendant).

*Jacqueline J. Footman,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Warren Maxwell,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree, in violation of General Statutes § 53a-55 (a) (1).[1] The defendant claims that the trial court erred (1) in charging the jury that under General Statutes § 53a-19 (c) (1)[2] the provocation does not need to be intentional, and (2) in charging the jury that § 53a-19 (c) (1) applied to this case, where the alleged provocation was committed through an assault on a third party. We find error.

[1] General Statutes § 53a-55 (a) (1) provides: "A person is guilty of manslaughter in the first degree when: (1) with intent to cause serious physical injury to another person, he causes the death of such person or a third person."

[2] General Statutes § 53a-19 provides: "USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

The jury could reasonably have found the following facts. On September 28, 1987, the defendant's younger brother, Andre Portis, was involved in a verbal altercation with a group of six teenagers. In this group was Kenneth Mapp, the victim's younger brother. At some point during the exchange, Portis produced a small handgun, pointed it at Mapp, and fired the weapon. Mapp was not struck by the shot. At that point, the parties dispersed. Portis returned to his house, while Mapp and two of his friends ran a few blocks away and obtained a sawed-off shotgun. Mapp loaded the gun and proceeded back toward the Portis house with his friends. En route, they were joined by the victim, Delbert Mapp. The group then proceeded to the front of the Portis house. At this time, Portis and the defendant were on or near their first floor porch.

The Mapp contingent called out for a one-to-one fight between Portis and Kenneth Mapp. The defendant also supported a one-to-one fight between Kenneth Mapp and Portis. After noticing that Delbert Mapp was holding the sawed-off shotgun, the defendant produced a small handgun, which he held while advocating a fair fight.

A fistfight between Portis and Kenneth Mapp then ensued. Jonathan Jones, a member of the Mapp contingent, testified that, just before the fight started, he had taken the sawed-off shotgun away from the scene. As the fight progressed and it became apparent that Portis was losing, the defendant struck Kenneth Mapp on the back of the neck with the butt of the handgun. Thereupon, Delbert Mapp rushed at the defendant. The defendant turned toward Delbert Mapp and fired two shots, one of them striking him in the chest and killing him. The defendant testified that he had heard someone in the crowd call out "shoot him" and that he looked up to see the victim rushing at him. He testified that he did not notice whether the victim was

armed but stated that the victim was carrying the shotgun the last time he had looked at him. The defendant further testified that he was trying to "stop" the victim, not kill him.

The defendant was arrested and charged with the crime of murder, in violation of General Statutes § 53a-54a.[3] Before the case was submitted to the jury, the defendant submitted to the trial court a written request that it charge, inter alia, on the lesser included offense of manslaughter in the first degree under General Statutes § 53a-55 (a) (1), and on the elements of self-defense as provided by General Statutes § 53a-19. The defendant's request to charge included most of § 53a-19, including all of subsection (c), which provides in pertinent part: "Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person . . . ." See footnote 2, supra.

---

[3] General Statutes § 53a-54a provides: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

On appeal, the defendant's assignments of error do not involve the trial court's initial instructions to the jury,[4] but involve the court's response to the jury's subsequent requests for clarification on the elements of self-defense. During its deliberations, the jury submitted five requests for further clarification of the trial court's instructions, three of which were directed toward the elements of self-defense. The final request was as follows:

"One of the jurors thinks that Anthony's act of hitting Kenneth on the back of the neck was not *intentional* provocation to get Del to rush so Anthony could shoot him—therefore his claim of self defense is legitimate. Other jurors feel that provocation does not have to be an *intentional* act done to get Del to 'rush.' They feel *any* 'provocation' is grounds to dismiss the defense of self defense. Please clarify." (Emphasis in original.)

In response, the trial court had the jury listen to the audio tape of its original self-defense instructions, and then read the pertinent subsection of § 53a-19 (a) (1) verbatim. The trial court told the jury:

"You will note that in that quotation it starts out with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person. The word intentional is not in the statute before the word provoke. He provokes the use of physical force against such other person. So that should answer your question, ladies and gentlemen. That's the way the statute is worded.

"I'll read it again. [The court read the statute to the jury.] . . . The word intentional is—intent is only in the beginning, with intent to cause physical injury. There is not intent provided in the statute under—

---

[4] In his brief, the defendant states that these instructions were "thorough."

before the word provokes. He provokes the use of physical force. That should answer your question, I hope."

The defendant took exception to that instruction on two grounds. First, the defendant claimed that, contrary to the court's instructions, the phrase "with intent to cause physical injury or death to another person" did modify the word "provokes." Second, the defendant claimed that subsection (c) applied to only two party situations, and did not contemplate a situation where the act of provocation was directed toward a third party.

A trial court's charge to the jury must be "correct in the law, adapted to the issues and sufficient to guide the jury." *State* v. *Shaw,* 185 Conn. 372, 383, 441 A.2d 561 (1981), quoting *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980). Whenever a claim of self-defense is raised, the defendant has a constitutional right to proper jury instructions on the elements of self-defense. *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982). Our standard of review of a claim regarding improper instructions on the law of self-defense is "whether it is reasonably possible that the jury were misled." Id.; *State* v. *DeJesus,* 194 Conn. 376, 388, 481 A.2d 1277 (1984). We conclude that under the trial court's instructions it is reasonably possible that the jury was misled.

We note initially that both of the defendant's claims of error regarding the trial court's instructions involve the statute's utilization of the word "provokes." Both of the defendant's claims, therefore, are to a large extent dependent upon each other. Thus, our determination as to one issue necessarily controls our resolution of the other.

The defendant's first claim is that the trial court erred in charging the jury that under § 53a-19 (c) (1) the provocation need not be intentional. The defendant

argues that the phrase "with intent to cause physical injury or death to another person" modifies the words "he provokes the use of physical force by such other person." We agree with the defendant.

"To provoke is to excite, to stimulate, to arouse." *State* v. *Warner,* 34 Conn. 276, 279 (1867). While it appears that "provokes" is imbued with its own aspect of intent, § 53a-19 (c) (1) by its very words adds another measure of intent. General Statutes § 53a-5[5] provides that when a term such as "with intent" is used in a statute, "it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears." Thus, the phrase "with intent to cause physical injury or death to another person" must be presumed to apply to the word "provokes," since no intent to limit such an application appears. Properly read, the phrase "with intent to cause physical injury or death to another person" describes the mental state that the provoker must have.

We note also that our Supreme Court's language in *State* v. *Corchado,* supra, strongly buttresses our determination that under § 53a-19 (c) (1) the defendant must do more than just provoke the use of physical force. The court stated: "[General Statutes § 53a-19 (c) (1)] provides that '[n]otwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) *with intent* to cause physical injury or death to another person, he *provokes* the use of physi-

---

[5] General Statutes § 53a-5 provides: "CRIMINAL LIABILITY; MENTAL STATE REQUIRED. When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally,' 'knowingly,' 'recklessly' or 'criminal negligence,' or by use of terms, such as 'with intent to defraud' and 'knowing it to be false,' describing a specific kind of intent or knowledge. When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears."

cal force by such other person, or (2) he is the *initial aggressor* . . . .' (Emphasis added.) General Statutes § 53a-19 (c). [A] defendant, therefore, cannot avail himself of the justification provisions of subsection (a) where, under (c), he is proven to have acted *with the requisite intent to provoke under (c) (1)* or he is proven to be the initial aggressor under (c) (2). Whether [a] defendant did, in fact, *act with such intent* and whether he was the initial aggressor are critical circumstances in the jury's evaluation of his claim of self-defense." (Emphasis added.) *State* v. *Corchado,* supra, 664.

The *Corchado* court's emphasis on the words "with intent" and "provokes" evinces a linkage between the words. The court's recurrent subsequent use of the words "requisite intent" and "such intent" further cements this linkage. We hold, therefore, that the provocation element of subsection (c) (1) carries with it the requirement that the actor act with the specific intent to elicit the use of physical force by another person in order to cause physical injury or death to that person by, for example, retaliating with force against that person. It is not enough, then, merely that the defendant by his conduct elicited the use of physical force by Delbert Mapp; he must have embarked upon his conduct with the specific intent to provoke Delbert Mapp into using physical force, intending to cause Delbert Mapp physical injury or death. Therefore, the trial court erred in instructing the jury that "provoking the use of physical force" was all that the statute required.

This discussion also relates directly to the defendant's second claim of error, namely, that the trial court erred by applying § 53a-19 (c) (1) to the facts of this case because the act that provokes the use of force by the victim must be directed to the same person whom the actor intends to harm or kill. We disagree with the defendant's argument that § 53a-19 (c) (1) applies only

to a two party situation, but we agree with the defendant that the court erred by applying § 53a-19 (c) (1) to the facts of this case.[6]

Section 53a-19 (c) (1) is not confined by its terms to a two party situation. Thus, for example, § 53a-19 (c) (1) would apply, where the actor, intending to harm the victim by retaliation, intentionally provoked the victim, by attacking the victim's loved one, into using physical force against the actor. In that three party situation, § 53a-19 (c) (1) would apply because the actor, "with intent to cause physical injury or death to another person," namely, the victim, "provoke[d] the use of physical force by such other person," namely, the victim, by means of attacking the victim's loved one. Thus, it is true that under § 53a-19 (c) (1), both the object of the defendant's intent to cause physical injury or death and the person provoked by the defendant's conduct into using physical force against the defendant must be the same person. It is not true, however, that the defendant's provocative conduct be directed only against the victim; that conduct may also be directed against a third party, as long as the defendant acts toward that third party with the intent to provoke the victim into using physical force against the defendant.

This leads us to conclude that the court erred in applying § 53a-19 (c) (1) to the facts of this case. Under our view of § 53a-19 (c) (1), it would apply to this case only

[6] We disagree with the state's argument that this claim is unreviewable because the defendant induced the claimed error. While it is true that the defendant included the text of General Statutes § 53a-19 (c) (1) in his written request to charge, we do not believe it induced the trial court to commit error. The request to charge did not address the application of § 53a-19 (c) (1), but concentrated on the other elements of self-defense. We note also that in taking his exception to the trial court's instructions concerning this subsection, counsel for the defendant stated "[a]nd I think clearly there's no way that the jury can find that Anthony Hawkins intended to provoke Delbert Mapp by hitting Delbert Mapp's brother. So I think this is not particularly pertinent in here."

if the jury could reasonably conclude from the evidence that the defendant, when he struck Kenneth Mapp, did so with the specific intent to elicit the use of force by Delbert Mapp in order to cause physical harm or death to Delbert Mapp. There was no evidence to support such an inference. Issues that are not supported by the evidence should not be submitted to the jury. *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 (1975). Because this error involved the specific question that the jury considered to be crucial, there can be no doubt that this instructional error was harmful.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.