# STATE OF CONNECTICUT *v.* WILLIE BROWN
## (7023)

BORDEN, O'CONNELL and FOTI, Js.

Argued April 11—decision released August 7, 1990

*Louis S. Avitabile,* special public defender, with whom, on the brief, was *Denise Dishongh,* special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Patrick J. Clifford,* senior assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant was charged in a substitute information with the crime of murder, in violation of General Statutes § 53a-54a (a). Following a jury trial, he was convicted of the lesser included offense of manslaughter in the first degree, in violation of General Statutes § 53a-55 (a) (1). On appeal he claims the trial court made improper evidentiary rulings and gave an incorrect instruction on self-defense. We affirm the trial court's judgment.

The jury could reasonably have found the following facts. At about 3:15 a.m. on December 21, 1986, the defendant, who was highly intoxicated, arrived at the New Haven apartment of Carol Zimmerman, his former girl friend. He began to pound and kick at the door and the victim, Zimmerman's new boyfriend, went to investigate. The victim unlocked the door and opened it slightly. As he did so, the defendant reached through the doorway, grabbed the victim by the throat, and pulled his head into the hallway. A moment later, the victim, with his throat slashed, pulled back into the apartment and staggered into the kitchen. He then came out of the kitchen with a knife in his hand, and staggered toward the apartment door, where he collapsed and died.

I

The defendant first claims that the trial court improperly excluded certain statements that he made to third

parties after the incident and prior to his arrest. In an offer of proof made in the absence of the jury, the defendant presented the testimony of his wife, his sister-in-law, and a friend. The defendant either visited or telephoned these individuals in the hours after the stabbing. He sought to have the witnesses testify as to what he had said to them. The proffered testimony of each witness was virtually identical. Each testified that the defendant told them that he had "cut" someone but had not meant to do it. The trial court sustained the state's objection that the testimony was inadmissible hearsay and self-serving. The defendant then' attempted to introduce his poststabbing statements during his own direct examination. The state again successfully objected.

In addressing the defendant's claims, we begin with the observation that evidentiary rulings of the trial court will be overturned only where the defendant can demonstrate an abuse of discretion and substantial prejudice or injustice. *State* v. *Hernandez,* 204 Conn. 377, 390, 528 A.2d 794 (1987). We find no such abuse of discretion here.

Hearsay is defined as any " 'out-of-court statement that is offered to establish the truth of the matters contained therein . . . . " *In re Jason S.,* 9 Conn. App. 98, 103, 516 A.2d 1352 (1986). On appeal, the defendant claims that the statements were admissible under either the party admission or prior consistent statement exceptions to the hearsay rule. Their exclusion, he argues, deprived him of the ability to present a defense.

The short answer to the defendant's first claim is that a party admission can only be used *against* the party who makes it. *In re Jason S.,* supra, 104; C. Tait & J. LaPlante, Handbook of Connecticut Evidence (1988) § 11.5.2. The statements in question do not fall within the party admission exception to the hearsay rule

because they were being offered by the defendant, the one who made them. *In re Jason S.,* supra; B. Holden & J. Daly, Connecticut Evidence (1988) § 93a, p. 906.

The defendant's alternative argument, namely that the proffered evidence was admissible under the prior consistent statement exception to the hearsay rule; see *State* v. *Brown,* 187 Conn. 602, 608, 447 A.2d 734 (1982); also fails. He did not present this theory to the trial court. Instead, he offered the statements solely for the purpose of showing he lacked the intent to kill the victim. Consequently, we will not review this claim. *State* v. *Kim,* 17 Conn. App. 156, 158, 550 A.2d 896 (1988).

Finally, we note that the defendant made these statements in the hours *after* the stabbing, and he offered them to show that he had not intended to kill the victim. Therefore, all evidence regarding the statements was properly excluded as self-serving. *State* v. *McDowell,* 179 Conn. 121, 125, 425 A.2d 935 (1979); *State* v. *Cato,* 21 Conn. App. 403, 408–409, 574 A.2d 240 (1990). "[T]o allow [the defendant] to make declarations in support of his cause and then to give those declarations in evidence would, in effect . . . allow him to make evidence in his favor at his pleasure." B. Holden & J. Daly, supra, § 100; see *State* v. *Swift,* 57 Conn. 496, 506, 18 A. 664 (1889). A party would never want for testimony if he could so easily manufacture it. *Watson* v. *Osborne,* 8 Conn. 363, 368 (1831).

## II

The defendant next claims that the trial court should not have allowed three other defense witnesses to invoke their fifth amendment privileges against self-incrimination in order to avoid answering some of his questions. The defendant sought to have the witnesses testify about the defendant's use of illegal drugs in the

hours preceding the stabbing. Prior to his offer of proof, defense counsel advised the court that he did not intend to ask the witnesses about their own use, purchase or possession of narcotics. The state's attorney responded that if any of the witnesses testified to being present when the defendant used drugs, he intended to cross-examine them concerning their own possible purchase, possession and use of drugs and would initiate prosecution if the testimony warranted.

The court advised the witnesses of their fifth amendment rights and allowed each to consult with an attorney. All three subsequently invoked their privileges when asked questions related to the defendant's drug use on the date in question.[1] In each instance, the court ruled that the use of the privilege was proper because answers to the defendant's questions would have provided "a link in the chain of evidence" and ultimately would have put the witnesses at risk for a possible narcotics prosecution. We agree.

A criminal defendant has a clear right to compel witnesses to testify on his behalf. U.S. Const., amend. VI; *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). When, however, a defendant's sixth amendment right conflicts with a witness' fifth amendment privilege against self-incrimination, the witness' privilege must prevail. *State* v. *Simms,* 170 Conn. 206, 209, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976). The defendant argues that the witnesses could not invoke the privilege because they were not in danger of prosecution. In the alternative, he asserts that the court could have allowed them to claim it only when cross-examined about their own possibly criminal activities.

---

[1] Two witnesses refused to answer any questions regarding their contact with the defendant on the day of the stabbing. The third witness admitted to drinking with the defendant but refused to answer any questions about the defendant's drug use.

The fifth amendment extends to disclosures that merely "furnish a link in the chain of evidence needed to *prosecute* the claimant for a . . . crime." (Emphasis added.) *Hoffman* v. *United States,* 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 2d 118 (1951); *United States* v. *Rodriquez,* 706 F.2d 31, 36 (2d Cir. 1983). "To sustain the privilege against self-incrimination, it need only be evident from the implications of the question, in the context in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *State* v. *Erhardt,* 17 Conn. App. 359, 364, 553 A.2d 188 (1988).

Thus, the trial court need only decide whether the testimony sought would open the door to the reasonable possibility of prosecution, not whether the testimony would be enough, in and of itself, to support a conviction. Since the defendant here proposed to have the witnesses admit to being present during the commission of a crime, the trial court properly concluded that the answers could have furnished "a link in the chain of evidence" necessary to prosecute the witnesses. *Hoffman* v. *United States,* supra.

More importantly, a witness may properly refuse to respond to a question posed on direct examination where an answer could expose him to the risk of self-incrimination on cross-examination. *United States* v. *Rodriquez,* supra, 37. If the witnesses testified, the state would have been permitted to cross-examine them on matters related to their credibility. *Reese* v. *United States,* 467 A.2d 152, 157 n.7 (D.C. App. 1983). Such questions could properly have included inquiries into the witnesses' own contemporaneous drug usage. *Jaggers* v. *United States,* 482 A.2d 786, 794 (D.C. App. 1984). In light of the state's expressed intent to cross-examine the witnesses about their own drug-related

activities and to initiate prosecution if warranted, we are satisfied that the defendant's questioning would have exposed the witnesses to the risk of incrimination on cross-examination. The court could not have removed that risk by allowing the privilege to be invoked only on cross-examination. See *United States* v. *Rodriquez,* supra; *Jaggers* v. *United States,* supra.

## III

After the witnesses had invoked their fifth amendment privileges, the defendant attempted to admit oral statements made by them to the defendant's investigator. The statements described the consumption by the witnesses and the defendant of a large amount of alcohol and crack cocaine in the hours before the defendant stabbed the victim. At trial, the defendant argued that the statements were third party statements against penal interest exculpatory to the defendant and, therefore, were admissible under the hearsay exception set forth in *State* v. *Gold,* 180 Conn. 619, 630, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980), and *State* v. *DeFreitas,* 179 Conn. 431, 450, 426 A.2d 799 (1980). The trial court concluded that the statements did not meet the *Gold* and *DeFreitas* tests and were therefore inadmissible.

The defendant now contends that the trial court should *not* have applied the *Gold* test, which requires that corroborating circumstances support the trustworthiness of the statement; *State* v. *Gold,* supra, 630–31;[2] because the statements here were not exculpatory to

---

[2] Under *State* v. *Gold,* 180 Conn. 619, 633, 431 A.2d 501 (1980), trustworthiness is determined by considering "(1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness."

the defendant. He claims, rather, that the statements were *inculpatory* both to the witnesses and to the defendant on the possible collateral narcotics violations. Therefore, the statements were inherently reliable, and their trustworthiness did not have to be established by corroborating circumstances.

The defendant asks that we review this claim even though it was not argued to the trial court. We refuse to do so because we review evidentiary claims " 'solely on the ground on which the party's objection is based.' *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971). . . . [O]nce the authority and the ground for an objection are stated, our review of the trial court's ruling is limited to the ground asserted."[3] *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983). The defendant also argues that the statements could come in under the residual exception to the hearsay rule. *State* v. *Erhardt,* supra, 367. This claim also was not raised at trial and likewise will not be reviewed. *State* v. *Kim,* supra.

## IV

In his final claim, the defendant argues that the trial court should have included references to his intoxication when instructing the jury on self-defense. General Statutes § 53a-19 (a) provides that "a person is justi-fied in using reasonable physical force upon another person to defend himself . . . from what he reason-ably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly force may not be used unless the

---

[3] We note in passing that even if we did review the defendant's claim, it would have no merit. The statements in question are clearly exculpatory to the defendant because they could possibly exonerate him or reduce the degree of punishment to which he might be exposed. *State* v. *Gold,* 180 Conn. 619, 630 n.5, 431 A.2d 501 (1980).

actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." The jury must view the situation from the defendant's perspective, and the defendant's perception ultimately must be found to be reasonable before he can be acquitted on the basis of the defense. *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984).

The defendant argues that the jury should have been allowed to consider his intoxication in determining both what the defendant subjectively perceived at the time of the stabbing and whether that belief was reasonable from the point of view of the reasonably prudent intoxicated person. We disagree. The position taken by the defendant finds no support in Connecticut law and goes against the weight of other authorities, which hold that intoxication has no role in assessing a self-defense claim. See *United States* v. *Yazzie,* 660 F.2d 422, 431 (10th Cir. 1987), cert. denied, 455 U.S. 923, 102 S. Ct. 1282, 71 L. Ed. 2d 464 (1982); W. LaFave & A. Scott, Substantive Criminal Law (1986) § 4.10 (d); 1 F. Wharton, Criminal Law and Procedure § 215.

Under Connecticut law, voluntary intoxication is not a defense to a criminal charge. General Statutes § 53a-7; *State* v. *Stevenson,* 198 Conn. 560, 568, 504 A.2d 1029 (1986). "The logic of the rule that intoxication is not a defense to a crime . . . dictates that it should not be available as a partial defense, effective in conjunction with [self-defense] . . . ." *United States* v. *Yazzie,* supra. The defendant would have us abandon the requirement that his conduct be judged ultimately against that of a reasonably prudent person and replace it with what might be euphemistically called the "reasonably prudent drunk" rule. This we decline to do.

Finally, the defendant claims that the jury should have been allowed to consider his intoxication in determining whether he provoked the victim. See General Statutes § 53a-19 (c).[4] A person can be foreclosed from claiming self-defense if he is found to have "acted with the specific intent to elicit the use of physical force by another person in order to cause physical injury or death to that person by . . . retaliating with force against that person." *State* v. *Hawkins,* 19 Conn. App. 609, 616, 563 A.2d 745, cert. denied, 212 Conn. 820, 565 A.2d 540 (1989).

Even if we assume, arguendo, that the defendant's claimed intoxication could have negated the specific intent requirement of § 53a-19 (c), any omission by the trial court on this point was harmless. See *State* v. *DeMartin,* 20 Conn. App. 430, 436, 568 A.2d 1034 (1990). In order to convict the defendant of manslaughter in the first degree, the jury had to find that, regardless of the defendant's intoxication, he had the specific intent to inflict serious physical injury on the victim. The court properly instructed the jury on the effect of intoxication on the element of intent. Therefore, because the jury found that the defendant's intent to cause serious physical injury to the victim was not affected by intoxication, the defendant was barred from claiming self-defense; *State* v. *Hawkins,* supra; and thus any omission in the instruction was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] General Statutes § 53a-19 (c) provides: "Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."