STATE OF CONNECTICUT *v.* CHARLES BELLINO
(10515)

FOTI, LAVERY and FREEDMAN, Js.

Argued January 12—decision released May 25, 1993

*Lauren Weisfeld,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *John Waddock,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1),[1] attempted assault in the first degree in violation of General Statutes §§ 53a-49 (a) and 53a-59 (a) (1), and carrying a pistol without a permit in violation of General Statutes § 29-35. The defendant claims that the trial court improperly instructed the jury regarding self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 3:45 a.m. on September 24, 1989, a jeep and a red hatchback were traveling on Sherman Avenue in New Haven. The hatchback was driven by Ernest Reid. The defendant occupied the

---

[1] The jury found the defendant guilty of manslaughter in the first degree as a lesser included offense of the charge of murder in violation of General Statutes § 53a-54a (a).

front passenger seat of the hatchback, and Henry Jackson was in the rear seat behind the defendant. The jeep was driven by Frederick Stuart. Frederick's brother, Jose Stuart, occupied the front passenger seat of the jeep, and Matthew Taylor was in the rear seat behind the driver.

As the two vehicles proceeded along Sherman Avenue, they became embroiled in a "cat and mouse" game. Reid drove the hatchback in front of the jeep and then prevented the jeep from passing the hatchback.

At the intersection of Sherman Avenue and Chapel Street, the jeep stopped near the curb and the hatchback stopped to the left of the jeep. The two vehicles were four to five feet apart. The driver of the jeep rolled down his window and asked Reid if he had a problem. Reid replied that he did not. The driver of the jeep bent forward, and immediately thereafter the defendant produced a handgun and fired two shots at the jeep. As the jeep then pulled forward, the defendant fired two or three more shots, shattering the driver's side and rear windows of the jeep. The entire incident lasted only a few seconds. Once they were back at Reid's apartment, Reid asked the defendant what had happened. The defendant told Reid that he thought the driver of the jeep had been reaching for a weapon. As a result of this incident, Frederick Stuart died of a gunshot wound to the head. Taylor sustained a gunshot wound to the back.

The defendant testified that before the confrontation with the jeep, he had noticed a shotgun between the front seats of the hatchback, near the emergency brake. At some point during the "cat and mouse" game between the vehicles, according to the defendant, Reid pointed the shotgun over the defendant and toward the jeep. After the defendant pushed the shotgun away

from his face, Reid put the gun back between the front seats. The defendant further testified that, at the intersection of Sherman Avenue and Chapel Street, after the oral exchange between the drivers, the driver of the jeep made a movement, Jackson yelled that the occupants of the jeep had a gun and then gunfire began, at which time the defendant ducked and stayed down for the duration of the gunfire. The defendant stated that he did not possess a weapon or shoot anyone during the encounter.

The trial court instructed the jury on self-defense as follows: "The law provides that a person is justified in using deadly force upon another person to defend himself from what he reasonably believed to be the use or imminent use of deadly physical force or the infliction of great bodily harm, provided that the person may only use the degree of force which he reasonably believed to be necessary for the purpose of defending himself.

"A person cannot use what the law calls deadly physical force, that is physical force which can be reasonably expected to [lead] to death or serious physical injuries, unless he reasonably believes that the other person was himself using or about to use deadly physical force or was inflicting, or about to inflict great bodily harm. The key word in the general rule and these important exceptions is 'reasonable.'

"First of all, the defendant must have a reasonable belief that he is faced with the imminent use of deadly physical force upon him. A reasonable belief is one which a reasonably prudent person in the same circumstances would have. It is not an irrational belief, nor is it a belief that is not justified by all the circumstances existing then and there, nor is it necessarily the belief that the defendant in fact had; it is the belief that a reasonable person would have had under the circumstances. Secondly, acting with that reasonable belief,

the amount and the degree of force which he uses must be reasonable. It must be that degree of force which a reasonable person in the same circumstances would use and no more.

"If the degree of force used is excessive or unreasonable in view of all the circumstances, the defendant is not entitled to the defense of self-defense. Whether the defendant had a belief that Mr. Stuart was about to inflict deadly physical force against him, and if he had that belief, whether it was a reasonable belief, and whether the defendant's use of deadly physical force was reasonable are all questions of fact for you to decide."

The defendant's challenge to the court's instructions on self-defense is twofold. The defendant contends that the trial court failed to instruct the jury, in accordance with General Statutes § 53a-19 (b) (1),[2] that the defendant was required to retreat only if he could do so with complete safety. The defendant also contends that the trial court did not properly instruct the jury, in accordance with General Statutes § 53a-19 (a),[3] regarding the subjective aspect of the self-defense inquiry. We do not agree with either claim.

The defendant did not properly preserve either claim for appellate review.[4] He seeks review, however, under

---

[2] General Statutes § 53a-19 (b) (1) provides in pertinent part that "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety . . . by retreating . . . ."

[3] General Statutes § 53a-19 (a) provides in pertinent part that "a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[4] Although the defendant submitted a written request to charge on the subject of self-defense, he did not properly preserve his claims for appel-

the well established principles for the review of unpreserved constitutional claims set forth in *State* v. *Golding,* 213 Conn. 232, 239–40, 567 A.2d 823 (1989),[5] because his fundamental right to present a defense includes a proper instruction on the elements of self-defense. *State* v. *Gilchrist,* 24 Conn. App. 624, 632–33, 591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). Nonetheless, we conclude that the defendant cannot prevail on this claim because he cannot show that "the alleged constitutional violation clearly exists and clearly deprived [him] of a fair trial." *State* v. *Golding,* supra, 240.

## THE DEFENDANT'S DUTY TO RETREAT

The defendant correctly points out that the trial court did not instruct the jury on the duty to retreat or the statutory limitations on that duty. See footnote 2, supra. It is well settled, however, that the trial court should adapt its instructions to the issues in the case in order to provide appropriate guidance to the jury. See *State* v. *Butler,* 207 Conn. 619, 636, 543 A.2d 270 (1988); see also *State* v. *Hawkins,* 19 Conn. App. 609, 618, 563 A.2d 745, cert. denied, 212 Conn. 820, 565 A.2d 540 (1989) (issues not supported by the evidence should not be submitted to the jury). Here, the court properly omitted from its self-defense instructions any mention of the duty to retreat because there was no

late review because the request to charge did not comply with the requirements of Practice Book § 854. See *State* v. *Hancich,* 200 Conn. 615, 622–23, 513 A.2d 638 (1986).

[5] Under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), the defendant can prevail on his unpreserved constitutionally based claims only if the following four conditions are all met: "(1) the record is adequate to review the alleged claim of error, (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

evidence that the defendant could safely retreat from the vehicle. In fact, the undisputed evidence suggests otherwise, and the state did not claim that retreat was an option available to the defendant.

Moreover, the defendant's suggestion that the court's failure to instruct on retreat "left the jury with no guidance whatsoever, allowing it to substitute its commonplace assumptions for the law," finds no support in the record. Legal principles concerning the duty to retreat did not play a part in this case, and there is no reason to believe that the jury would have considered that issue on its own. In its instructions on self-defense, the trial court properly chose to focus the jury's attention on the crux of the defendant's claim of self-defense, namely, that he was justified in using the degree of force that he reasonably believed necessary to defend himself from what he reasonably believed to be the imminent use of physical force. Under these circumstances, the defendant's claim must fail.

## The Defendant's Belief Regarding Imminent Attack

The defendant also claims that the trial court did not properly instruct the jury on the subjective aspect of his self-defense claim. Specifically, he focuses on the following language in the court's self-defense instructions, which served to guide the jury in its evaluation of the defendant's belief that he was faced with the imminent use of deadly physical force: "A reasonable belief is one which a reasonably prudent person in the same circumstances would have. It is not . . . necessarily the belief that the defendant in fact had; it is the belief that a reasonable person would have had under the circumstances."

"The standard of review to be applied to a claim of an improper instruction on the elements of self-defense is whether it is reasonably possible that the jury was

misled. *State* v. *Grullon,* 212 Conn. 195, 204, 562 A.2d 481 (1989); *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982). The charge is to be read as a whole; sections are not to be judged in isolation from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978). The charge is not to be 'critically dissected in a microscopic search for possible error.' *State* v. *Foreshaw,* 214 Conn. 540, 548, 572 A.2d 1006 (1990). The test to be applied to any part of a charge is whether the charge as a whole presents the case to the jury in a manner to prevent injustice. *State* v. *Maturo,* 188 Conn. 591, 599, 452 A.2d 642 (1982). We review the whole charge to determine whether it sufficiently guided the jury to a proper verdict. *State* v. *Shaw,* 24 Conn. App. 493, 499, 589 A.2d 880 (1991)." *State* v. *Hester,* 28 Conn. App. 469, 472, 612 A.2d 120 (1992); *State* v. *Jenkins,* 29 Conn. 262, 272–73, 614 A.2d 1249, cert. denied, 224 Conn. 916, 617 A.2d 171 (1992).

It is settled that a jury's evaluation of a claim of self-defense has both subjective and objective elements. *State* v. *Hall,* 213 Conn. 579, 586 n.7, 569 A.2d 534 (1990); *State* v. *Corchado,* supra, 663; *State* v. *Williams,* 25 Conn. App. 456, 464, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991). "In evaluating a claim of self-defense, a trier of fact must first examine the danger that a defendant claims he faced. It is clear that here '[t]he statute focuses on the [defendant] claiming self-defense. It focuses on what *he* reasonably believes under the circumstances . . . .' (Emphasis in original.) *State* v. *Corchado,* [supra]." *State* v. *Williams,* supra. " 'The jury must view the situation from the perspective of the defendant. . . . [T]he defendant's belief [however] ultimately must be found to be reasonable.' " *State* v. *Hall,* supra, quoting *State* v. *DeJesus,* 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984). In evaluating the defendant's belief that he was faced with the imminent use of deadly physical

force, the jury must first determine whether the defendant believed that an attack was imminent, and then it must determine whether that belief was reasonable. See *State* v. *DeJesus,* supra; *State* v. *Williams,* supra.[6]

Before beginning our analysis of the challenged jury instructions, we note that the defendant's subjective beliefs concerning the danger he faced were not a critical issue in this case. The defendant denied that he used any force during the incident. His alternative claim of self-defense rested on Reid's testimony that, after the incident, the defendant stated that "the guy was reaching like he was reaching for a weapon." Nothing more was offered to assist the jury in determining whether, *from the perspective of the defendant,* an attack was imminent. It is significant that there was no evidence presented to suggest that the defendant's perspective would have been any different from that of any other reasonably prudent person. The evidence, for example, did not show "that the defendant's intelligence was less than average, that the defendant had previously been the victim of a violent attack [under similar circumstances], and that the defendant was aware of the victim's propensity for violence"; *State* v. *Williams,* supra, 463; or that "[t]he victim was a convicted felon, drug user, drinker, and gambler . . . that the victim had been armed with a gun and threatened the defendant in the past, and that the defendant believed him to be a bully and was afraid of him." *State* v. *Anderson,* 28

---

[6] After evaluating a defendant's belief regarding whether he faced imminent attack, the jury then must determine whether the defendant used reasonable force to repeal that attack. "The stating point of the jury's inquiry into whether 'reasonable force' was used by a defendant is whether the defendant *believed* that deadly force was necessary to repeal the attack. . . . Next, the jury's inquiry should focus on the question of whether that *belief* was reasonable." (Citation omitted; emphasis in original.) *State* v. *Williams,* 25 Conn. App. 456, 464, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991). This appeal, however, does not involve a challenge to the court's instructions regarding reasonable force. See footnote 7, infra.

Conn. App. 833, 851, 614 A.2d 438 (*Lavery, J.,* dissenting), cert. granted, 224 Conn. 908, 615 A.2d 1048 (1992). While the proper starting point of the jury's inquiry into the claim of self-defense was whether the defendant believed he was in danger; *State* v. *DeJesus,* supra; this subjective inquiry was necessarily undertaken by the jury in this case from the perspective of a defendant whose knowledge of the victim and whose experience in situations of danger was not at all differentiated from those of the average citizen. It is with these peculiar circumstances of this case in mind that we now turn to an examination of the defendant's remaining challenge to the court's instructions on self-defense.[7]

While the trial court here did not emphasize the subjective aspect of the self-defense inquiry; compare *State* v. *Williams,* supra, 466 n.5 and accompanying text; it did explain that part of the inquiry to the jury. The trial court began its self-defense charge by providing the jury with an almost verbatim recitation of General Statutes § 53a-19 (a). This language, like that of the statute, sets forth the appropriate subjective-objective test for evaluating the defendant's belief concerning the danger he was facing. See *State* v. *Corchado,* supra.

[7] We note that the defendant does not challenge that aspect of the trial court's self-defense instructions pertaining to the jury's evaluation of the degree of force used by the defendant. The trial court defined the permissible degree of force objectively as "that degree of force which a reasonable person in the same circumstances would use and no more." Similar language was recently disapproved by this court in *State* v. *Anderson,* 28 Conn. App. 833, 614 A.2d 438, cert. granted, 224 Conn. 908, 615 A.2d 1048 (1992), and *State* v. *Williams,* 25 Conn. App. 456, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991). The defendant, however, did not offer *any* subjective evidence regarding his belief concerning the amount of force necessary to repel the attack that he perceived to be imminent. Because the jury could examine this aspect of his claim of self-defense from only an objective point of view, the court's instruction on the degree of force that could be used under the circumstances necessarily lacked any subjective inquiry. For this reason, much of the analysis undertaken in *State* v. *Anderson,* supra, is not directly applicable to the circumstances of this case.

Immediately thereafter, the court provided the jury with additional guidance on the objective part of its inquiry by explaining how the jury would have to determine whether the defendant's belief was a reasonable one. The court necessarily referenced the objective, reasonable person at this stage of the instructions. In doing so, however, the court did not impermissibly take the jury's focus away from the defendant claiming self-defense. Rather, it "enabled the jury properly to carry out its duty to examine the evidence both subjectively and objectively, while keeping in mind that the defendant's conduct must 'be judged ultimately against that of a reasonably prudent person.' " *State* v. *Williams,* supra, 466, quoting *State* v. *Brown,* 22 Conn. App. 521, 529, 577 A.2d 1120, cert. denied, 216 Conn. 825, 582 A.2d 204 (1990).

Finally, the court summarized the jury's task in evaluating the claim of self-defense as follows: *"Whether the defendant had a belief* that Mr. Stuart was about to inflict deadly physical force against him, *and if he had that belief, whether it was a reasonable belief,* and whether the defendant's use of deadly physical force was reasonable are all questions of fact for you to decide." (Emphasis added.) This language captured precisely the essence of the two part, subjective-objective inquiry required by § 53a-19 (a) concerning the threat faced by the defendant: first, whether the defendant believed that he faced the imminent use of deadly physical force; second, whether that belief was reasonable. See *State* v. *DeJesus,* supra; *State* v. *Williams,* supra, 464. Consequently, rather than replacing the subjective-objective inquiry with one that focused exclusively on the question of whether a reasonable person would have believed that he faced an imminent attack; compare *State* v. *Anderson,* supra, 838, and *State* v. *Williams,* supra; as the starting point of its analysis, the trial court properly focused the jury's attention on the defendant's subjective belief about the danger he faced.

The defendant's challenge to this aspect of the court's instructions on self-defense, then, raises only an issue of emphasis. "A party is not entitled to a charge which is beyond criticism in every particular. . . . Rather, a charge is adequate if it is legally correct and presents the case to the jury in a just and fair manner." (Citations omitted; internal quotation marks omitted.) See *State* v. *Knighton,* 7 Conn. App. 223, 231, 508 A.2d 772 (1986). "We conclude that the trial court's instructions, as a whole, properly included both the subjective and objective portions of the self-defense test. It properly directed the jury to consider the defendant's personal belief about the danger he was facing . . . . This portion of the [defendant's] claim, therefore, also fails." *State* v. *Jenkins,* supra, 274.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

LAVERY, J., dissenting. Because I cannot agree with the majority's conclusion that the trial court properly instructed the jury on the defendant's claim of self-defense, I respectfully dissent.

It is important to note at the outset that the defendant's self-defense claim was the only defense he asserted. Our jurisprudence recognizes that a defendant in a criminal trial is entitled as a matter of law to jury instructions on any legitimate claimed theory of defense. "A fundamental element of due process is the right of a defendant charged with a crime to establish a defense. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Bethea,* 167 Conn. 80, 83, 355 A.2d 6 (1974). This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not

justified." *State* v. *Miller,* 186 Conn. 654, 660–61, 443 A.2d 906 (1982). If a defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction. *State* v. *Rosado,* 178 Conn. 704, 707–708, 425 A.2d 108 (1979). " '[A] defendant is "entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible . . . ." *United States* v. *Platt,* 435 F.2d 789, 792 (2d Cir. 1970), quoting *United States* v. *O'Connor,* 237 F.2d 466, 474 n.8 (2d Cir. 1956).' *United States* v. *Alfonso-Perez,* 535 F.2d 1362, 1365 (2d Cir. 1976)." *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986). In this case, the defendant was deprived of his constitutional right to present a defense when the trial court improperly instructed the jury on the law of self-defense in two crucial respects.

I

The trial court did not instruct the jury on the self-defense element of retreat. Under General Statutes § 53a-19 (b) (1) the defendant had a duty to retreat if he could do so with "complete safety." The defendant, in his request to charge, asked the court to instruct the jury that "[i]n order to find that the defendant was justified you must find that the defendant could not avoid the use of such force in complete safety by retreating." The majority concluded that the omission of any instruction on retreat was within the discretion of the trial court, writing: "Here, the court properly omitted from its self-defense instructions any mention of the duty to retreat because there was no evidence that the defendant could safely retreat from the vehicle. In fact, the undisputed evidence suggests otherwise, and the state did not claim that retreat was an option available to the defendant. . . . Legal principles concerning the

duty to retreat did not play a part in this case, and there is no reason to believe that the jury would have considered that issue on its own."

The majority correctly points out that there was no evidence presented suggesting that the defendant could retreat safely, and that the state did not claim otherwise. The defendant's inability to retreat in complete safety, however, made it even more imperative that the jury receive instructions on the retreat element. In this case, the defendant claimed that he shot at the victims because he believed that one of them was reaching for a firearm. Vital to his defense was the fact that, if he was in danger in the passenger's seat of an automobile, he could not retreat in complete safety. The jury should not have been allowed to proceed ignorant of this legal principle.

Applying the standard based on the state and federal precedent outlined above, I would conclude that the trial court's failure to instruct the jury on the issue of retreat deprived the defendant of his constitutional right to establish a defense.

## II

The trial court's use of an objective standard in its jury instructions on the issue of whether the defendant's belief that he faced imminent attack was reasonable and warranted the use of deadly force in response likewise harmed the defendant's ability to present a defense. The trial court instructed the jury that it was to evaluate the defendant's belief that he faced imminent attack in terms of the belief "a reasonably prudent person in the same circumstances would have," and further that such a belief was "[not] necessarily the belief that the defendant in fact had; it is the belief that a reasonable person would have under the circumstances." The trial court's focus on an objective standard was improper.

In *State* v. *Williams,* 25 Conn. App. 456, 595 A.2d 895, cert. denied, 220 Conn. 916, 597 A.2d 339 (1991), this court found a jury charge similar to the one given in this case to be improper. In *Williams,* the trial court instructed the jury to evaluate the force used by the defendant against the level of force that would be employed by the "average person of ordinary intelligence." We relied on well settled law stating that the jury is not to use a purely objective standard in evaluating self-defense. Id., 464; see *State* v. *Hall,* 213 Conn. 579, 586 n.7, 569 A.2d 534 (1990); *State* v. *DeJesus,* 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984); *State* v. *Corchado,* 188 Conn. 653, 663, 453 A.2d 427 (1982); see also *State* v. *Anderson,* 28 Conn. App. 833, 851, 614 A.2d 438 (*Lavery, J.,* dissenting), cert. granted, 224 Conn. 908, 615 A.2d 1048 (1992). The jury must view the situation from the perspective of the defendant. The defendant's belief, however, ultimately must be found to be reasonable. *State* v. *Williams,* supra, 464. The starting point of the jury's inquiry into whether reasonable force was used by a defendant is whether the defendant believed that deadly force was necessary to repel an attack. Next, the jury's inquiry should focus on the question of whether that belief was reasonable. Id. "The statute focuses on the person . . . claiming self-defense." *State* v. *Corchado,* supra. In this case, the trial court's instructions did not properly focus the jury's initial attention on the defendant's perspective, but instead on the perspective of a "reasonably prudent person."

The defendant's beliefs were important to his self-defense claim. The defendant was a passenger in a motor vehicle that, through no direct action of his, became involved in a highly dangerous passing game. At an intersection, the driver of the other vehicle asked the driver of the car in which the defendant was riding whether he had "a problem," and then leaned for-

ward. The jury heard evidence to the effect that the defendant believed the victim was reaching for a weapon. The law requires that the jury evaluate whether the defendant believed that deadly force was necessary to protect himself and then whether that belief was reasonable. In its focus on a reasonable person standard, the trial court's instructions could have led the jury to evaluate improperly the defendant's claim of self-defense.

Self-defense was the only defense presented by the defendant in this case. Because the jury instructions on self-defense were incorrect in two critical respects, I believe that defendant's constitutional right to present a defense was irrevocably hindered and that the error was harmful. I would reverse and remand for a new trial.

Accordingly, I respectfully dissent.