STATE OF CONNECTICUT *v.* EDWARD LEMOINE
(SC 16139)

Borden, Katz, Palmer, Sullivan and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued December 5, 2000—officially released May 15, 2001

*Neal Cone,* assistant public defender, for the appellant (defendant).

*Lawrence J. Tytla,* senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Edward Lemoine, was tried by a jury on the charges[1] of assault in the first degree in violation of General Statutes (Rev. to 1997) § 53a-59,[2] reckless endangerment in the first degree in violation of General Statutes § 53a-63,[3] carrying a pistol without a permit in violation of General Statutes (Rev. to 1997) § 29-35,[4] and murder in violation of General Statutes § 53a-54a.[5] The defendant argued self-defense on the murder charge and misidentification with regard to the assault and reckless endangerment charges. On April 27, 1999, a jury found the defendant guilty of assault in the third degree in violation of General Statutes § 53a-61,[6] a lesser included offense of assault in the first degree; the jury also found him guilty on all

---

[1] Initially, the defendant had been charged with assault in the first degree, reckless endangerment in the first degree, and carrying a pistol without a permit in one case, and with murder in a second case. The trial court consolidated the cases.

[2] General Statutes (Rev. to 1997) § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[3] General Statutes § 53a-63 (a) provides: "A person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person."

[4] General Statutes (Rev. to 1997) § 29-35 provides in relevant part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . .

"(b) The holder of a permit issued pursuant to section 29-28 shall carry such permit on his person while carrying such pistol or revolver."

[5] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[6] General Statutes § 53a-61 (a) provides: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

other charges. On June 4, 1999, the defendant was sentenced to one year imprisonment for assault and one year imprisonment for reckless endangerment, five years imprisonment for carrying a pistol without a permit, and fifty-five years imprisonment on the murder conviction, for a total sentence of sixty-two years. On June 21, 1999, the defendant appealed directly to this court.

On appeal, the defendant claims that the trial court: (1) improperly omitted an instruction to the jury regarding his limited duty to retreat; (2) gave the jury a misleading instruction on reasonable doubt; and (3) instructed the jury improperly regarding the concept of reasonable degree of force. We conclude that the defendant's claims are without merit and, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On February 7, 1998, at approximately 1:42 a.m., the defendant approached the victim, Merrill Epps, inside Lucky's Cafe, a New London bar. The two men exchanged words, and the victim grabbed the defendant by his shirt collar and appeared to be pulling the defendant toward the door. The defendant then pulled out a gun and shot the victim in the chest. As the defendant fled, he fired shots toward the crowd at the bar, one of which hit Amin Kearse in the arm.

Upon arriving at Lucky's Cafe, the police found Epps outside the bar, unconscious on the ground next to a wall. Epps died from the wound shortly after emergency personnel transported him to the hospital. Kearse was treated at the hospital for a gunshot wound to his left brachial artery; hospital personnel indicated that, had the wound gone untreated, Kearse could have bled to death.

Kearse later identified the defendant in a photographic lineup as the person who shot him. A second

witness, Maurice Cole, also identified the defendant as the person who shot Epps. Police then arrested the defendant on February 8, 1998.

## I

## DUTY TO RETREAT

The defendant first claims that it was improper for the trial court to refrain from instructing the jury on the defendant's duty to retreat under General Statutes § 53a-19 (b).[7] The defendant contends that such an instruction was necessary to explain to the jury that he had a duty to retreat, rather than use physical force to defend himself, only under certain limited circumstances, i.e., where he could have retreated in complete safety. The defendant argues that, without the instruction, the jury might have assumed the duty to retreat to be much broader, i.e., that it exists even where a defendant cannot retreat in complete safety.[8] Because this claim was not preserved at trial, the defendant seeks to prevail under either *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine as set forth in Practice Book § 60-5.[9] The state contends that such an instruction was irrelevant to the

[7] General Statutes § 53a-19 (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating . . . ."

[8] The defendant testified to the following facts in support of his self-defense claim. He stated that he had been teasing a female acquaintance for bumping into him when he had noticed Epps put his drink down and approach him. The defendant further testified that Epps then had grabbed him, choked him and punched him. The defendant indicated that he had been frightened by the anger in Epps' face and outmatched by Epps' physical strength. The defendant testified that, because of the choking, he had been unable to breathe and had been dazed when he fired the gun.

[9] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

case presented to the jury, and that any such charge would have served only to confuse the jury. Therefore, the state submits that the requirements of *State* v. *Golding*, supra, 239–40, are not satisfied, and that application of the plain error doctrine is not warranted. We agree with the state.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id.

The defendant argues that the absence of an instruction on the duty to retreat denied him his right to present a defense under the sixth amendment to the United States constitution,[10] made applicable to the states through the fourteenth amendment,[11] and under the due process clause of article first, § 8, of the Connecticut constitution.[12] "An improper instruction on a defense,

---

[10] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[11] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[12] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf . . . and in all prosecutions . . . to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty

like an improper instruction on an element of an offense, is of constitutional dimension." *State* v. *Ash*, 231 Conn. 484, 493, 651 A.2d 247 (1994). Upon a valid claim of self-defense, a defendant is entitled to "proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified." *State* v. *Prioleau*, 235 Conn. 274, 283–84, 664 A.2d 743 (1995); see also *State* v. *Miller*, 186 Conn. 654, 661, 443 A.2d 906 (1982) ("proper jury instructions on the elements of self defense [were necessary] so that the jury [could] ascertain whether the state [had] met its burden of proving beyond a reasonable doubt that the assault [had] not [been] justified").

In the present case, although the defendant was entitled to a jury charge on self-defense, we do not agree that such an instruction necessarily should have included an explanation of the defendant's duty to retreat. Such an explanation was not relevant to the present case because the state did not argue to the jury that the defendant should have retreated. On the contrary, the state's case rested on the premise that the defendant faced no threat of serious bodily harm and that, therefore, there was no threat from which to retreat. The state's depiction of events indicated that the defendant and the victim had exchanged words and the victim apparently had grabbed the defendant's

---

or property without due process of law . . . ."

In his analysis of his claim under the state constitution, the defendant does not differentiate his state due process claim from his federal constitutional claim but, rather, discusses article first, § 15, of the Connecticut constitution, which provides that "[e]very citizen has a right to bear arms in defense of himself and the state," as the basis for the defense of self-defense in Connecticut. Because it is not disputed that self-defense is a recognized defense in Connecticut, and because "[t]he defendant has failed to differentiate his claim under . . . the Connecticut constitution from his claim under . . . the United States constitution . . . we consider only his claim under the federal constitution." *State* v. *Francis*, 228 Conn. 118, 134 n.17, 635 A.2d 762 (1993).

collar so as to remove him from the bar, rather than to attack him. Because the defendant has not shown that the jury instructions were constitutionally inadequate, we conclude that the defendant has failed to satisfy the third requirement under *State* v. *Golding*, supra, 213 Conn. 240, i.e., that the alleged constitutional violation clearly exists.

In *State* v. *Beltran*, 246 Conn. 268, 717 A.2d 168 (1998), we addressed an analogous situation. We held: "Because there had been no attempt by the state to defeat the defendant's self-defense claim by using the initial aggressor doctrine, there was no occasion for the trial court to instruct the jury on that doctrine. We fail to see, therefore, how the defendant can complain about the omission of an instruction on a doctrine that only would have harmed him had it been given to the jury." Id., 276–77. Similarly, in *State* v. *Prioleau*, supra, 235 Conn. 289 n.16, we held that, where the state had argued only that the defendant could not have believed that the victim was about to use deadly force, the trial court's failure to instruct the jury on the degree of force used by the defendant was harmless.

In the present case, had the state's attack on the defendant's self-defense claim been based on the defendant's failure to retreat, a complete jury instruction on the duty to retreat would have been necessary. See *State* v. *Bryant*, 233 Conn. 1, 9, 658 A.2d 89 (1995); see also, e.g., *State* v. *Beltran*, supra, 246 Conn. 276–77. Because the state made no claim that the defendant should have retreated, however, the defendant did not suffer constitutional harm by the trial court's omission of an unnecessary and potentially confusing instruction on the duty to retreat. See *State* v. *Beltran*, supra, 276–77.

The defendant further argues that, even if the state did not use the duty to retreat to attack the defendant's

claim of self-defense, the jurors' commonsense reaction when instructed to evaluate the reasonableness of the defendant's reaction naturally would be to consider whether he could have retreated from the situation. In making such a determination, the defendant argues, the jurors incorrectly would have assumed that the defendant had a duty to retreat even if he could not have retreated in complete safety. We disagree. To require that the jury be instructed, not only on matters at issue, but also on all arguably related but factually inapplicable areas of the law not only would be impractical, but would impair the jury's understanding of the relevant legal issues. The defendant's position essentially would require that a duty to retreat instruction be given to the jury in every case where the defendant presents a self-defense claim. Such an instruction would have been unnecessary and potentially confusing to the jury.

Furthermore, our conclusion that the trial court properly omitted a duty to retreat instruction from its instructions to the jury disposes of the defendant's plain error claim.

## II

## REASONABLE DOUBT

The defendant also claims that the trial court's jury instructions regarding reasonable doubt were misleading. Specifically, the defendant argues that the jury instructions gave the jury an improperly narrow view of what constitutes reasonable doubt, while also confusing the jury with a long and convoluted definition of the term. The defendant did not preserve this issue and now seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40. We agree with the state that there was no constitutional violation as a result of the trial court's reasonable doubt instruction and, consequently,

that the defendant has failed to satisfy the third prong of *Golding.* Id.

The trial court instructed the jury on reasonable doubt as follows: "A reasonable doubt is a doubt which is something more than a guess or a surmise. It is not a conjecture or a fanciful doubt. A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising doubts. A reasonable doubt is a doubt based on reason. . . . It is not enough for the state to make out a case of probable guilt; the burden on the state never shifts. The state must prove guilt beyond a reasonable doubt. A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence."

Additionally, the trial court instructed the jury: "[A]bsolute certainty in the affairs of life is almost never attainable and the law does not require absolute certainty on the part of the jury before you return a verdict of guilty. The state does not have to prove guilt beyond all doubt or to a mathematical or absolute certainty. What the law does require, however, is that after hearing all of the evidence, if there is something in that evidence or lack of evidence which leaves in the minds of the jury, as reasonable men and women, a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and found not guilty. If there is not reasonable doubt, the defendant can be found guilty. Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except guilt, is consistent with guilt, and is inconsistent with any other reasonable conclusion. If you can in reason reconcile all of the facts proven with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty."

It is well settled that "whether a jury instruction is improper is gauged by considering the instruction in

its entirety, and with reference to the facts and evidence in the case, so as to determine whether it fairly presented the case to the jury so that no injustice was done under established legal rules." *State* v. *Munoz*, 233 Conn. 106, 120, 659 A.2d 683 (1995). Jury instructions are not to be reviewed in "artificial isolation . . . ." (Internal quotation marks omitted.) *State* v. *Corchado*, 188 Conn. 653, 661, 453 A.2d 427 (1982). In *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161 (1995), we stated that "[t]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotations marks omitted.) See *State* v. *Francis*, 228 Conn. 118, 136 n.19, 635 A.2d 762 (1993) (challenged language, read in context of surrounding language, could not have misled reasonable juror); see also *United States* v. *Bifield*, 702 F.2d 342, 351 (2d Cir. 1983) (jury instructions, "read in their entirety, were sufficiently clear so as not to dilute the presumption of innocence to which [the] appellant is entitled" and "did not impermissibly shift the burden of proof to defendant").

We first address the trial court's attempts to define "reasonable doubt." In *State* v. *Griffin*, 253 Conn. 195, 205–206, 749 A.2d 1192 (2000), we concluded that the instructions "that reasonable doubt is: (1) not a surmise, a guess or mere conjecture; [and] (2) [is] a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence . . . in the context of the court's entire charge on reasonable doubt . . . did not dilute the state's burden of proof." (Citations omitted; internal quotation marks omitted.) Additionally, we noted that we previously had "approved a reasonable doubt instruction containing the statement that such a doubt is not a surmise, a guess or a conjecture" and

we "repeatedly [had] upheld the constitutionality of an instruction characterizing reasonable doubt as a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence . . . ." (Citations omitted; internal quotation marks omitted.) Id., 207. Accordingly, we conclude that the trial court's use of these instructions in the present case did not improperly narrow the scope of reasonable doubt.

We further conclude that the trial court's additional instructions to the jury on the definition of reasonable doubt, i.e., that "[a] reasonable doubt is a doubt based on reason" and that "[i]t is not enough for the state to make out a case of probable guilt," did not infringe upon the defendant's constitutional rights. We agree that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Miles* v. *United States*, 103 U.S. 304, 312, 26 L. Ed. 481 (1880). Although these additional instructions likely added little to the trial court's already sufficient explanation of the term, it cannot be said, however, that they impaired the jury's understanding of the term such that the defendant's right to have the jury properly instructed was affected. Regardless of whether the trial court crossed the fine line from thorough to redundant, we conclude that the defendant has failed to demonstrate that the trial court's jury instructions on the meaning of reasonable doubt, taken as a whole, violated the defendant's constitutional rights. See *State* v. *Delgado*, 247 Conn. 616, 627, 725 A.2d 306 (1999).

The defendant also argues that the trial court's instruction to the jury to give the defendant "the benefit of that doubt" diluted the state's burden of proof in the eyes of the jury. We disagree. The trial court's instruction to the jury to give the defendant the benefit of any reasonable doubt remaining in their minds after they

had heard all of the evidence, although perhaps unnecessary, given the trial court's other explanations of reasonable doubt, did not violate the defendant's right to have the jury properly instructed. The defendant argues that this "benefit of that doubt" language and the instruction that "[i]f you can in reason reconcile all of the facts proven with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty," somehow shifted the burden to the defendant to provide a doubt and removed from the state its burden of proving guilt beyond a reasonable doubt. To accept the defendant's interpretation would require us to look at the challenged language in isolation, thereby ignoring the preceding instruction that "[i]n this case as in all criminal prosecutions the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt" and that "[i]t is not enough for the state to make out a case of probable guilt; the burden on the state never shifts." Furthermore, in *State* v. *Griffin*, supra, 253 Conn. 210 n.18, we cited the instruction that "[i]f you can, in reason, reconcile all of the facts proved with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty" as a permissible alternative to the "two-inference" rule.[13] (Internal quotation marks omitted.) Considered in their entirety, the trial court's instructions on reasonable doubt were not improper, and the defendant has failed to establish that a constitutional violation clearly exists, as required under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40.

---

[13] A "two-inference" instruction provides that, "if two conclusions reasonably can be drawn from the evidence, one of guilt and one of innocence, the jury must adopt the conclusion of innocence." *State* v. *Griffin*, supra, 253 Conn. 208. In *Griffin*, we invoked "our supervisory authority over the administration of justice to direct that, in the future, our trial courts refrain from using the 'two-inference' language so as to avoid any such possible misunderstanding." Id., 209–10.

## III

## REASONABLE DEGREE OF FORCE

Last, the defendant contends that the trial court's instructions regarding a reasonable degree of force under General Statutes § 53a-19 (a)[14] were misleading. The defendant seeks to prevail on this unpreserved claim under *State* v. *Golding*, supra, 213 Conn. 239–40, and under the plain error doctrine of Practice Book § 60-5.

The trial court instructed the jury that "a person may justifiably use deadly physical force in self-defense only if he reasonably believes that: (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, and (2) that deadly physical force is necessary to repel such attack."

The defendant claims that it was improper for the trial court to instruct the jury that, in order to accept the defendant's claim of self-defense, the jury was required to find that his use of deadly physical force was reasonable, in addition to finding that his belief that he was being threatened with deadly physical force was reasonable. The defendant contends that, if the jury had found that his belief that the victim was about to attack him with deadly physical force was reasonable, the defendant's use of such force to protect him-

[14] General Statutes § 53a-19 (a) provides: "Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." Subsection (b) addresses the duty to retreat; see footnote 7 of this opinion; and subsection (c) addresses the situation where the defendant is the initial aggressor.

self was per se reasonable; consequently, the defendant argues, it was not necessary for the jury to be given a "double reasonableness instruction." We disagree.

We cannot ignore the plain wording of the statute. See *State* v. *Smith*, 207 Conn. 152, 168, 540 A.2d 679 (1988). Section 53a-19 (a) provides that the defendant "is justified in using *reasonable* physical force upon another person to defend himself . . . from what he *reasonably* believes to be the use or imminent use of physical force . . . ." (Emphasis added.) Furthermore, in *State* v. *Prioleau*, supra, 235 Conn. 285–86, we held that "a person may justifiably use deadly physical force in self-defense only if he reasonably believes both that: (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, *and* (2) *that deadly physical force is necessary to repel such attack.*" (Emphasis added.) "Thus, if a jury determines that the defendant's honest belief that he had needed to use deadly force, instead of some lesser degree of force, was not a reasonable belief, the defendant is not entitled to the protection of § 53a-19." Id., 287. [15] The trial court charged the jury in accordance with these principles.

Rather than providing, as the defendant suggests, that, faced with deadly physical force, the defendant's only reasonable response would have been deadly physical force, the statute merely indicates that, where he

[15] The same reasoning underlies our decision in *State* v. *DeJesus*, 194 Conn. 376, 389 n.13, 481 A.2d 1277 (1984), rejecting the "heat of passion" defense. In *DeJesus*, this court wrote: "The 'heat of passion' principle urged by the defendant entitles a defendant claiming self-defense to use excessive force that follows closely upon any incapacitating force as long as the defendant believes that he is fighting for his life. . . . The Connecticut test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable. We, therefore, reject the 'heat of passion' principle as claimed by the defendant." (Citations omitted.) Id.

reasonably believed he was faced with deadly physical force or with the infliction of great bodily harm, the defendant *may* have been justified in responding with deadly physical force. Not only must the defendant's belief in the type of threat facing him have been reasonable, but, under the wording of the statute, the degree of force used in response must be evaluated for reasonableness as well. Accordingly, we conclude that the trial court appropriately followed the statute in its instructions.

The defendant further argues that to determine whether any other degree of force would have been a reasonable response to deadly force or the imminent infliction of great bodily harm would have required the jury to perform a "duty to retreat" analysis, a subject on which the trial court did not instruct the jury. We disagree. Determining whether the degree of force used by the defendant was reasonable is distinct from determining whether the defendant had a duty to retreat. For example, even where there is no duty to retreat when one is faced with deadly force, it is conceivable that it would be unreasonable to continue to use deadly force after rendering the aggressor incapacitated.

We, therefore, are not persuaded either that "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial" under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40, or that the defendant has illustrated the existence of a manifest injustice, such that we would apply plain error review. Accordingly, this claim fails.

The judgment is affirmed.

In this opinion the other justices concurred.