******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY W. HALL
(AC 39355)

Lavine, Prescott and Elgo, Js.

*Syllabus*

Convicted of the crime of manslaughter in the first degree in connection
with the stabbing death of the victim, the defendant appealed to this
court. He claimed, for the first time on appeal, that the trial court violated
his constitutional right to present a defense by failing to provide the
jury with an instruction concerning his lack of a duty to retreat from
the scene of the incident. *Held* that the trial court's decision not to
instruct the jury concerning the duty to retreat was proper under the
circumstances of this case; because the duty to retreat played no part
in the defendant's criminal trial, as the state did not advance that theory
or mention the word retreat before the jury, a jury instruction on the
defendant's duty to retreat was not necessary and might have confused
the jury, and, therefore, the defendant could not establish the existence
of a constitutional violation that deprived him of a fair trial.

Argued February 1—officially released May 15, 2018

*Procedural History*

Substitute information charging the defendant with
the crime of murder, brought to the Superior Court in
the judicial district of New Britain and tried to the jury
before *D'Addabbo, J.*; verdict of guilty of the lesser
included offense of manslaughter in the first degree;
thereafter, the court rendered judgment in accordance
with the verdict, from which the defendant appealed
to this court. *Affirmed.*

*Jade N. Baldwin*, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with
whom were *Brian Preleski*, state's attorney, and, on
the brief, *Brett Salafia*, assistant state's attorney, for
the appellee (state).

*Opinion*

ELGO, J. The defendant, Jeffrey W. Hall, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1] On appeal, the defendant claims that the trial court improperly declined to provide the jury with an instruction on the duty to retreat. We affirm the judgment of the trial court.

On the basis of the evidence adduced at trial, the jury reasonably could have found the following facts. At all relevant times, the defendant lived with Michelle Lewis and Karen Letourneau at a residence known as 19 Lincoln Street in Bristol. In the early hours of June 21, 2013, Letourneau, the defendant, and other individuals were celebrating Lewis' birthday at the residence. Among the attendees was Jerry Duncan, who had been invited by Letourneau. The attendees enjoyed birthday cake and then drinks together on a front porch. At some point, a disagreement arose between the defendant and Duncan, and the defendant indicated that he wanted Duncan to leave. In response, Letourneau told the defendant that "I pay rent [here] and he's my company and he's not leaving." The party then continued for approximately one hour without incident.

Sometime after 3 a.m., the Bristol Police Department received an anonymous noise complaint regarding the party at the residence. Officer Daniel Colavolpe was on patrol that evening and responded to the complaint with Officer Al Myers. When they arrived at the residence, Colavolpe saw multiple people on the porch who were "conversing loudly," at which point the officers advised them to "go inside and call it a night." The individuals agreed and went inside the house.

Nevertheless, the party later resumed on the porch. When Letourneau went inside to check on her minor son, she heard a "commotion in the front hallway." Letourneau opened the front door and found the defendant and Duncan "physically attacking each other." At trial, Letourneau described what happened next: "I froze, I panicked. I came back in the house and then about a minute later, I went back out and that's when I saw everything covered with blood. . . . There was blood flying everywhere." Letourneau retreated inside the house and then "went back out a third time" and found the defendant seated on the porch. When she peered over the railing, Letourneau saw Duncan "laying on the bottom of the stairs face up and his legs were going up the stairs."[2]

While those events unfolded, the police received a second noise complaint. Colavolpe and Myers again responded to the residence, arriving at approximately 3:45 a.m. As he stood on the front porch, Colavolpe heard "a male voice fairly loudly say, 'Yeah, call 911, there's a corpse at the bottom of the stairs,' and then

followed up a very short time later with, 'I don't fucking care, tell him I stabbed him.' " Colavolpe then opened the door and saw Duncan lying motionless at the bottom of the stairs with "a large amount of blood around his head . . . ."

Colavolpe entered the residence with his gun drawn and ordered everyone inside to the ground. In response, the defendant, who was "covered in blood," informed Colavolpe that the other individuals "were fine" and that "he was the one [who] stabbed [Duncan] but [that] it was in self-defense." Colavolpe then moved the defendant from the crime scene to the porch while awaiting assistance from additional officers. At that time, the defendant was "very calm" and did not appear to be injured in any way. The defendant then stated to Colavolpe: "I just did what I was trained to do. [Duncan] punched me and I grabbed what I could and stabbed him. I stabbed him and broke off the knife. . . . I hope I killed him. I really hope I did. And if he wasn't such a dick, he wouldn't be dead."

The defendant made similar statements to Officers Tyler Meusel and Craig Duquette in the hours that followed. When Meusel responded to the scene, the defendant's demeanor was "[v]ery passive, almost nonchalant." As he sat in a police cruiser with Meusel, the defendant stated that he had acted in self-defense. The defendant asked if he had killed Duncan and then stated, "I hope I did." The defendant also asked Meusel what his sentence was likely to be for this crime, inquiring whether "it would be man[slaughter] second." As to how the altercation took place, the defendant informed Meusel that "[h]e came at me so I stabbed him in the throat." Duquette was involved in booking the defendant on June 21, 2013. When Duquette asked if he was injured, the defendant, pointing to his hand, said "maybe right here . . . from where I stuck the knife in him" and then laughed. The defendant stated that Duncan "had come to fuck with him" so he defended himself "[b]y stabbing him in the neck with a knife." The defendant also told Duquette that he was a veteran of the United States Army and "had utilized his military training to inflict the wounds" on Duncan.

Duncan died as a result of the injuries he sustained on June 21, 2013. The official cause of death was a stab wound to the carotid artery in his neck. The defendant subsequently was arrested and charged, by long form information dated January 25, 2016, with murder in violation of General Statutes § 53a-54a. At trial, the defendant presented a theory of self-defense.[3] The state's theory was that the defendant acted with the intent to cause death or serious physical injury to Duncan, and did not act in response to a fear of great bodily harm. Significantly, the state never suggested that the defendant had a duty to retreat or submitted evidence related thereto. Indeed, the word "retreat" was not men-

tioned at trial.

Following the close of evidence, the defendant filed a request to charge that sought, inter alia, an instruction indicating that he "did not have a duty to retreat." At the February 19, 2016 charging conference, the court discussed that request at length with the parties. The court reminded the parties that, under Connecticut law, the duty to retreat "does not apply if [the defendant was] in his home . . . ."[4] In light of the parties' stipulation that the physical altercation between the defendant and Duncan took place in the defendant's home, the court opined that the requested instruction on the inapplicability of the duty to retreat likely would be confusing to jurors. The court then took the matter under advisement.

Prior to closing arguments on February 22, 2016, the court revisited the defendant's request to charge. At that time, the court stated that it was concerned about injecting "law to the jury that is not part of the case." The court reiterated its view that an instruction on the inapplicability of the duty to retreat would be unnecessarily confusing to the jury and therefore denied the defendant's request. Following closing arguments, the court provided a comprehensive instruction on self-defense in its charge to the jury. The defendant in this appeal raises no claim with respect to the propriety of that charge, save for its exclusion of an instruction on the duty to retreat.

The jury thereafter found the defendant not guilty of murder, but guilty of the lesser included offense of manslaughter in the first degree in violation of § 53a-55 (a) (1). The court rendered judgment accordingly and sentenced the defendant to a term of twenty years incarceration. From that judgment, the defendant now appeals.

On appeal, the defendant claims that the court improperly declined to provide the jury with an instruction concerning the duty to retreat, in violation of his sixth amendment right to present a defense.[5] The defendant did not preserve that constitutional claim at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015).[6] We review the defendant's claim because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Salters*, 78 Conn. App. 1, 4–5, 826 A.2d 202, cert. denied, 265 Conn. 912, 831 A.2d 253 (2003). We nevertheless conclude that the claim fails to satisfy *Golding*'s third prong.

The duty to retreat is one of the "statutory exceptions" to the defense of self-defense.[7] *State* v. *Diggs*, 219 Conn. 295, 301, 592 A.2d 949 (1991). The appellate courts of this state have held that a jury instruction on the duty to retreat is required under the sixth amend-

ment only if the state has advanced a theory related thereto. In the seminal case of *State* v. *Lemoine*, 256 Conn. 193, 197, 770 A.2d 491 (2001), the defendant claimed that "it was improper for the trial court to refrain from instructing the jury [about the] duty to retreat under . . . § 53a-19 (b)." The defendant further contended that "the absence of an instruction on the duty to retreat denied him his right to present a defense under the sixth amendment . . . ." Id., 198. Our Supreme Court disagreed, stating that "[i]n the present case, although the defendant was entitled to a jury charge on self-defense, we do not agree that such an instruction necessarily should have included an explanation of the defendant's duty to retreat. Such an explanation was not relevant to the present case because the state did not argue to the jury that the defendant should have retreated." Id., 199. The court emphasized that "had the state's attack on the defendant's self-defense claim been based on the defendant's failure to retreat, a complete jury instruction on the duty to retreat would have been necessary. . . . Because the state made no claim that the defendant should have retreated, however, the defendant did not suffer constitutional harm by the trial court's omission of an unnecessary and potentially confusing instruction on the duty to retreat." (Citations omitted.) Id., 200. Furthermore, no sixth amendment violation can be established when the prosecutor "never referenced the defendant's duty to retreat" at trial and "never argued to the jury that the defendant had an obligation to retreat under Connecticut law . . . ." *State* v. *Dawes*, 122 Conn. App. 303, 323, 999 A.2d 794, cert. denied, 298 Conn. 912, 4 A.3d 834 (2010). The same could be said of the prosecutor in the present case, as no theory was advanced, and no remark was made, on the defendant's duty to retreat.[8]

The defendant nonetheless posits that, without an instruction on the duty to retreat, "the jury may have decided that the defendant, rather than the victim, should have chosen to leave the residence to avoid further conflict . . . ."[9] That claim was raised before, and rejected by, our Supreme Court in *Lemoine*. As the court explained: "The defendant . . . argues that, even if the state did not use the duty to retreat to attack the defendant's claim of self-defense, the jurors' common-sense reaction when instructed to evaluate the reasonableness of the defendant's reaction naturally would be to consider whether he could have retreated from the situation. In making such a determination, the defendant argues, the jurors incorrectly would have assumed that the defendant had a duty to retreat . . . . We disagree. To require that the jury be instructed, not only on matters at issue, but also on all arguably related but factually inapplicable areas of the law not only would be impractical, but would impair the jury's understanding of the relevant legal issues. The defendant's position essentially would require that a duty to retreat instruc-

tion be given to the jury in every case where the defendant presents a self-defense claim. Such an instruction would have been unnecessary and potentially confusing to the jury." *State* v. *Lemoine*, supra, 256 Conn. 200–201; accord *State* v. *Bellino*, 31 Conn. App. 385, 391, 625 A.2d 1381 (1993) ("[l]egal principles concerning the duty to retreat did not play a part in this case, and there is no reason to believe that the jury would have considered that issue on its own"), appeal dismissed, 228 Conn. 851, 635 A.2d 812 (1994). The trial court here expressly relied on *Lemoine* in concluding that an instruction that the duty to retreat did not apply in the present case was unnecessary and likely to confuse jurors.

The duty to retreat played no part in the defendant's criminal trial. The state did not advance any such theory and not once did the prosecutor utter the word "retreat" before the jury. Bound by *State* v. *Lemoine*, supra, 256 Conn. 200–201, we therefore conclude that the defendant cannot establish the existence of a constitutional violation that deprived him of a fair trial. Mindful of its obligation to "adapt its instructions to the issues in the case in order to provide appropriate guidance to the jury"; *State* v. *Bellino*, supra, 31 Conn. App. 390; we conclude that the court's decision not to instruct the jury concerning the duty to retreat was proper under the circumstances of this case.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[2] Another attendee at the party, William Plocharski, was on the porch at the time of the altercation between the defendant and Duncan. Plocharski testified that he heard a ruckus and glanced inside the residence. When he saw the defendant and Duncan fighting, he thought to himself that it was "none of my business" and returned to the porch. The defendant then came crashing through a screen door with "blood all over him" and Plocharski helped him up. The defendant went back inside the residence, while Plocharski remained on the porch until police arrived.

[3] The defendant did not testify or call any witnesses at trial.

[4] See General Statutes § 53a-19 (b) (1) ("a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety . . . by retreating, except that the actor shall not be required to retreat if he or she is in his or her dwelling"); see also *State* v. *Shaw*, 185 Conn. 372, 378–79, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982).

[5] Although the defendant also alleges a violation of his right under article first, § 9, of the Connecticut constitution in his appellate brief, he has provided no independent analysis thereof. Accordingly, we consider his claim under the federal constitution alone. See *State* v. *Saturno*, 322 Conn. 80, 113 n.27, 139 A.3d 629 (2016).

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote

omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] Those exceptions are codified in General Statutes § 53a-19, which provides in relevant part: "(b) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he or she is in his or her dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he or she is a peace officer, a special policeman appointed under section 29-18b, or a motor vehicle inspector designated under section 14-8 and certified pursuant to section 7-294d, or a private person assisting such peace officer, special policeman or motor vehicle inspector at his or her direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he or she abstain from performing an act which he or she is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

[8] At oral argument, defense counsel conceded that the state never argued at trial that there was a duty to retreat on the part of the defendant.

[9] The defendant also argues that he "certainly [would] have altered his trial strategy had he known that the court would fail to fully inform the jury on the law of self-defense by leaving out the portion on [the] duty to retreat." Beyond that bald assertion, the defendant has provided no further explanation or analysis as to how his trial strategy would have changed, rendering his briefing of that claim inadequate. See, e.g., *State* v. *Pink*, 274 Conn. 241, 255–56, 875 A.2d 447 (2005) (mere assertion does not constitute adequate briefing). Moreover, in light of the fact that the duty to retreat plainly does not apply to the undisputed circumstances of this case, as the parties stipulated that the altercation took place in the defendant's home, we cannot envision how the defendant would have altered his trial strategy.

--------------------------------